### CHISHOLM v. COMMISSIONER OF INTERNAL REVENUE. *
### No. 417.

Circuit Court of Appeals, Second Circuit.
July 8, 1935.

Joseph H. Morey, of Buffalo, N. Y. (Morey & Schlenker, of Buffalo, N. Y., of counsel), for appellant.

Frank J. Wideman, Asst. Atty. Gen., and James W. Morris, John Mac C. Hudson, Lucius A. Buck, and J. P. Jackson, Sp. Assts. to Atty. Gen., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Chisholm, the petitioner, with four others, owned all the shares of stock in the Houde Engineering Corporation. On September 26, 1928, all five gave a thirty days' option upon these shares to Krauss & Co., which that company on October 11th agreed to take up; the option could only be "exercised by the payment of cash before its expiration." The record does not show whether Chisholm and his brother owned any other property than 300 shares each

*Writ of certiorari denied Helvering v. Chisholm, 56 S. Ct. 174, 80 L. Ed. —.

of Houde stock, but for some six or eight months before October, 1928, they had been discussing the formation of a partnership to manage their property in common, whatever it was; the brother wished to travel and disliked business; this proposal had nothing to do with taxation. The Houde shares had gone up very much in value and their attorney had told them that by forming a partnership they might postpone, and perhaps altogether escape, the taxes which would otherwise become due upon the sale, and for this reason they chose this time to form a partnership and did so on October 22d. To it they on the same day transferred the shares, its only capital, giving Krauss & Co. notice that this firm, not themselves, would perform the contract. Krauss & Co.'s assignee took up the option on the 24th, and the firm received the money. The firm was not then dissolved, nor has it been since; the brothers have continued to hold its assets in common as partners; they have bought and sold securities with the capital; they have not distributed any principal; whether they have distributed any earnings does not appear. The commissioner assessed a deficiency against each partner on the theory that he had realized a gain upon his holdings of Houde shares and the Board affirmed the ruling. Chisholm appealed.

 The commissioner first argues that the sale was made when Krauss & Co. notified the five sellers that it would take up the option. Clearly this was not the case; the option was an offer to sell, not to contract to sell; it required payment, not a promise to pay; and the notice, not corresponding with the offer, was legally a nullity. The sellers became bound only on the 24th when Krauss & Co.'s assignees paid the price. At that time the firm had already been formed and the shares had been transferred to it. We held in Helvering, Com'r, v. Walbridge, 70 F.(2d) 683, that when partners transfer property to the firm which in turn sells it, the taxation of any appreciation in its value before the transfer must await dissolution. That case would be concededly on all fours, were it not that the firm was formed confessedly to escape taxation. The Board thought that for this reason the transaction was not "bona fide," and that the business of the firm was not business properly speaking at all. The commissioner believes that the situation falls within Gregory v. Helvering, 293 U. S. 465, 55 S. Ct. 266, 79 L. Ed. 596. It

is important to observe just what the Supreme Court held in that case. It was solicitous to reaffirm the doctrine that a man's motive to avoid taxation will not establish his liability if the transaction does not do so without it. It is true that that court has at times shown itself indisposed to assist such efforts, Mitchell v. Board of Commissioners of Leavenworth County, 91 U. S. 206, 23 L. Ed. 302, and has spoken of them disparagingly, Shotwell v. Moore, 129 U. S. 590, 9 S. Ct. 362, 32 L. Ed. 827; but it has never, so far as we can find, made that purpose the basis of liability; and it has often said that it could not be such. The question always is whether the transaction under scrutiny is in fact what it appears to be in form; a marriage may be a joke; a contract may be intended only to deceive others; an agreement may have a collateral defeasance. In such cases the transaction as a whole is different from its appearance. True, it is always the intent that controls; and we need not for this occasion press the difference between intent and purpose. We may assume that purpose may be the touchstone, but the purpose which counts is one which defeats or contradicts the apparent transaction, not the purpose to escape taxation which the apparent, but not the whole, transaction would realize. In Gregory v. Helvering, supra, 293 U. S. 465, 55 S. Ct. 266, 79 L. Ed. 596, the incorporators adopted the usual form for creating business corporations; but their intent, or purpose, was merely to draught the papers, in fact not to create corporations as the court understood that word. That was the purpose which defeated their exemption, not the accompanying purpose to escape taxation; that purpose was legally neutral. Had they really meant to conduct a business by means of the two reorganized companies, they would have escaped whatever other aim they might have had, whether to avoid taxes, or to regenerate the world.

In the case at bar the purpose was certainly to form an enduring firm which should continue to hold the joint principal and to invest and reinvest it. The only possible objection to it is that raised by the Board, that the business so conducted was really not a business at all; that it was in effect the former separate businesses of the brothers conducted under a disguise, and so intended. It seems to us that this is contrary to the only evidence, the property was very substantial in amount, about a

million dollars, and it was open to the owners, who naturally wished to supervise it, to deal with it either separately, by mutual powers of attorney, or by pooling it in a firm. Each is different and they chose the last. Such arrangements in corporate form are common enough in families, where they offer many advantages in management. We cannot see why they must be by means of corporations; the Uniform Partnership Law makes "business" a very comprehensive term, it "includes every trade, occupation, or profession" (New York Partnership Law [Consol. Laws, c. 39], § 2). If two men club together to manage their property, sharing it in common, it seems to us unduly harsh to refuse it the name of an "occupation." Were there ground to suppose that the firm was made a mere cover for continued separate management, we should agree with the Board; but to say that a genuine pool of joint capital managed jointly is so egregious a financial monster that it cannot be admitted to lawful company, is too much.

 The decisions on which the commissioner relies are quite different; they concern sales in which the buyer did not gain dominion over the goods, but acted as a trustee or agent for the seller, the taxpayer. Such transactions contradict a sale, which presupposes that the seller loses not only title but control. Esperson v. Com'r, 49 F.(2d) 259 (C. C. A. 5); S. A. MacQueen Co. v. Com'r, 67 F.(2d) 857 (C. C. A. 3); Hellebush v. Com'r, 65 F.(2d) 902 (C. C. A. 6); Burnet v. Lexington I. & C. Co., 62 F.(2d) 906 (C. C. A. 4); Taylor O. & G. Co. v. Com'r, 47 F.(2d) 108 (C. C. A. 5); Atkins v. Com'r, 76 F.(2d) 387 (C. C. A. 5); and Shoenberg v. Com'r, 77 F.(2d) 446 (C. C. A. 8). But the seller's power must be reserved in the very transaction, if it is to vitiate the sale; it is not enough for example that all the shareholders of a company may together undo transactions with the corporation; they must unite to undo it, and they are not bound to unite. Jones v. Helvering, 63 App. D. C. 204, 71 F.(2d) 214. Theoretically the same might not be true when a single person owns all the shares; but usually it is. Burnet v. Commonwealth Improvement Co., 287 U. S. 415, 53 S. Ct. 198, 77 L. Ed. 399. We need not debate this distinction between a power reserved by the transaction itself and one resulting from pre-existing relations; so far as it goes, it supports the result we approve. Here the two brothers

may collectively end the firm when they wish; it does not matter; so could the four shareholders in Jones v. Helvering, supra, 63 App. D. C. 204, 71 F.(2d) 214. One cannot make a partnership without partners as one can a corporation without fellow shareholders; if one could, perhaps, following the analogy of Burnet v. Commonwealth Improvement Co., a sale to such a partnership would equally insulate the seller. Helvering v. General Utilities & Operating Co., 74 F.(2d) 972 (C. C. A. 4), is perhaps contrary to what we have said; the facts are not clear. The result, as we view it, should have depended upon whether when the shareholders got the shares in distribution which had been contracted for sale, they were under legal liability to complete the bargain. The opinion declares that they were. If not, if they were free to choose whether or not to perform the company's contract, the company had not sold. So far as the decision may be thought to go further than this, we cannot agree.

Order reversed; deficiency expunged.