**AMERICAN CHICLE CO. v. UNITED STATES (two cases).**

**Nos. 45209, 45439.**

Court of Claims.

Nov. 3, 1941.

Erwin N. Griswold, of Cambridge, Mass., for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The question in this case is the proper method of computing the credit to which an American corporation is entitled on its American income tax when it has received dividends from a foreign subsidiary which has paid income taxes to a foreign government upon the income a part of which has come to the American corporation as dividends.

Pertinent portions of the Revenue Act of 1936, some of the language of which is here under consideration, are as follows: "§ 131 * * * (f) *Taxes of foreign subsidiary.* For the purposes of this sec- tion a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends in any taxable year *shall be deemed to have paid the same proportion of any income, war-profits, or excess-profits taxes paid by such foreign corporation to any foreign country or to any possession of the United States, upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits: Provided,* That the amount of tax deemed to have been paid under this sub- section shall in no case exceed the same proportion of the tax against which credit is taken which the amount of such dividends bears to the amount of the entire net income of the domestic corporation in which such dividends are included. The term 'accumu- lated profits' when used in this subsection in reference to a foreign corporation, means the amount of its gains, profits, or income in excess of the income, war-profits, and excess-profits taxes imposed upon or with respect to such profits or income; and the Commissioner with the approval of the Secretary shall have full power to deter- mine from the accumulated profits of what year or years such dividends were paid; treating dividends paid in the first sixty days of any year as having been paid from the accumulated profits of the preceding year or years (unless to his satisfaction shown otherwise), and in other respects treating dividends as having been paid from the most recently accumulated gains, profits, or earnings. In the case of a foreign cor- poration, the income, war-profits, and excess-profits taxes of which are deter- mined on the basis of an accounting period of less than one year, the word 'year' as used in this subsection shall be construed to mean such accounting period." The italics are supplied and indicate the particu- lar language the meaning of which is in dispute.

The term "accumulated profits", found in the italicized portion, is defined later in the quoted part of the section as meaning the amount of the foreign corporation's income less the amount of income, war-profits or excess-profits tax paid to the foreign gov- ernment.

An example of the operation of the sec- tion easier to grasp than plaintiff's situa- tion may be given as follows: The A Com- pany, an American corporation, has a

wholly owned subsidiary in Canada, the C Company. The C Company has taxable income in Canada of $100,000, and is there taxed on that income at the rate of 20%, its Canadian tax thus being $20,000. Its remaining income is its "accumulated profits" according to the definition of section 131(f). The C Company remits as a dividend to its sole stockholder, the A Company, the entire $80,000, and that amount is included by the A Company in its taxable income in the United States. To how much credit is the A Company entitled as against its income tax?

Plaintiff's claim is that the A Company would be entitled to credit for the entire $20,000 tax paid by the C Company in Canada. Defendant argues that the A Company would be entitled to credit for only $16,000, the amount of the tax paid by the C Company on the $80,000 remitted to the A Company and included in the A Company's taxable income.

■ Both parties agree that the fraction of the foreign tax which is to be credited at home is to be arrived at by using the dividends remitted (80,000) as the numerator and the "accumulated profits" (also 80,000 in the example) as the denominator. The fraction in the example is one over one, hence it does not affect the result. They equally agree that if any less amount of the C Company's income was remitted to the A Company as dividends and the balance retained as surplus by the C Company, the numerator of the fraction would be that less amount, and the fraction would be, for example, 40,000 over 80,000 or one half. So there is no disagreement as to how to determine the applicable fraction.

But the parties disagree as to what amount of the foreign taxes to apply the fraction to, in order to produce the allowable credit on American taxes. The statute says the fraction should be applied to the income "taxes paid by such foreign corporation to any foreign country * * * upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid." As we have seen, there is a specific definition of the term "accumulated profits" in the same paragraph of the statute. The defendant's contention, therefore, that the American credit is the amount of the 20% Canadian tax on $80,000, the amount of the C Company's accumulated profits, seems to fit the statutory language with exactness.

■ Plaintiff's contention would require that the part of the statute quoted above be read as if it said "taxes paid upon the total taxable income upon or with respect to which such taxes were paid by the foreign corporation." But we think the language cannot have been intended to mean that, for that was the very language of the corresponding section of the 1918 act, section 240(c), 40 Stat. 1057, 1082, which was being revised when the present language was adopted in 1921. There is no reason to attribute to Congress an intention to substitute for a perfectly clear and unambiguous expression a doubtful and vague one which on its face seems to mean something else but which really means the same as the displaced clear expression.

■ In addition to the language, there is every reason why Congress should limit the credit to taxes paid upon that portion of the foreign income which became taxable income to the domestic taxpayer. It is hard to see why the American tax authorities should be interested in that portion of the foreign corporation's income which was taken from it by the foreign government as taxes, either for the purpose of taxing it, which the statute does not purport to do, or for the purpose of giving credit for taxes paid upon it, which is what plaintiff seeks to have done. The taxes paid upon that portion of the income are in no sense taxes paid upon American income, and there is no reason why they should be credited upon American income tax. The purpose of the credit provision is to avoid double taxation. Burnet v. Chicago Portrait Co., 285 U.S. 1, 52 S.Ct. 275, 76 L.Ed. 587. But of course there is no double taxation upon that portion of the foreign income which is neither returned nor taxed as American income. An individual taxpayer is allowed to deduct taxes which have no relation to his income, from his income, but he cannot subtract them from, nor credit them upon, his income tax. He thus saves on his income tax a small or larger percentage of such other taxes, depending upon the rate of his income tax. But plaintiff would deduct, in toto, not merely from its income, but from its income tax, foreign taxes paid upon foreign income which never became American income.

If plaintiff's contention is correct, a corporation can obtain a substantial tax advantage in its American income tax by carrying on its foreign business through a

subsidiary rather than through a branch of its own. In the illustration used above, if the A Company's foreign branch made the profit of $100,000, that entire amount would be returnable as American income subject to tax, and the foreign tax of $20,000 would be credited against American income tax. But if it did the business through a subsidiary, its returnable American income would be only $80,000, yet it would be entitled to the same credit of $20,000 according to plaintiff's contention. An intention so to change the 1918 statute which had formerly not permitted this kind of discrimination, should not be imputed to Congress by a strained interpretation of statutory language.

Plaintiff urges against the language of the statute and what seems to us the reason of the statute, its legislative history and administrative interpretation as supporting plaintiff's contentions.

The relevant legislative history is as follows: In the 1921 revision of the Revenue Act of 1918, section 240(c), 40 Stat. 1057, 1082, had been omitted from the House bill because that bill had exempted dividends from taxation, hence there was no occasion for giving credit for taxes paid on foreign income from which dividends were paid. In the Senate bill however, dividends from foreign corporations were taxed; but by inadvertence, as first drafted, it made no provision for credits for taxes paid by a foreign subsidiary corporation. Concerning the correction of this omission, the Treasury representative before the Senate Committee said: "I rewrote the old provision, safeguarding it from some abuses which it was open to and closing up some of the gaps that were in the old provision. (Senate Hearings before the Committee on Finance, 67th Cong., 1st Sess., on H. R. 8245, Internal Revenue, Part 2, Oct. 8, 1921, pp. 338, 339)." On the floor of the Senate, Senator Smoot offered on behalf of Senator Kellogg the amendment which is now section 131(f) here in question. He said, inter alia, in explanation: "A provision of this kind, giving the credit to a domestic corporation which owns a majority of the voting stock of a foreign corporation, is contained in section 240(c) of the revenue act of 1918. The amendment here under discussion merely reincorporates this credit in the proposed revenue act of 1921, with safeguards designed to protect the American tax as above described. In short, the

amendment in question is merely an improved version of an existing provision of law. (61st Cong. Record, part 7, p. 7184.)" In the course of his explanation, he gave an example which is in accord with plaintiff's contention as to the meaning of the statute. This example was contradictory of the apparent meaning of the language of the amendment and of his closing statement, quoted above, that the amendment merely reincorporated the 1918 credit "with safeguards designed to protect the American tax as above described." To follow the example would in fact seriously impair the American tax.

■ Such a legislative history, containing a direct statement of purpose pointing in one direction and an example pointing in the other, is of no real assistance in interpreting the statute. One or the other must have been a mistake. If a conclusion must be drawn from Senator Smoot's explanation, it would seem to be that the direct statement of purpose is less likely to have been inadvertent than the figures given in the example.

■ The administrative interpretation of the statute has been as follows: From 1921 to 1931 the department interpreted it in accordance with plaintiff's contention. In 1924 and 1926 the revenue act was reenacted without change material to our problem. In 1931 the department changed its interpretation, and since that time it has been in accordance with the defendant's contention. The section has been reenacted in 1932, 1934, 1936 and 1938 without change material to our problem. Congress has by reenactment acquiesced as frequently in the present departmental interpretation as in the earlier one, so that this history too is of no real assistance in the solution of our problem.

The case of International Milling Co. v. United States, 27 F.Supp. 592, 89 Ct.Cl. 128, involved the same question under section 131(f) of the Revenue Act of 1928. As we have said, up to 1931, the time that the tax there involved was imposed, administrative interpretation and Congressional reenactment both tended to support the construction here contended for by plaintiff. This court's decision in that case approved that construction. Administrative interpretation and Congressional reenactment since 1931 have all pointed in the other direction, which history tends to neutralize or destroy

one of the reasons upon which the International Milling decision was based.

But whether that be a sufficient distinction or not, we have, upon a careful reconsideration of the question, concluded that the interpretation given to the 1928 statute in the International Milling decision is not the correct interpretation of the 1936 and 1938 acts here involved. We are aware that the United States Circuit Court of Appeals for the Second Circuit in the case of F. W. Woolworth & Co. v. United States, 91 F.2d 973, and the United States District Court for the Western District of Pennsylvania in the case of Aluminum Co. of America v. United States, 36 F.Supp. 23, reached the conclusion which plaintiff here urges. Nevertheless, our conclusion is that the tax to which the proportion is to be applied is the foreign tax paid only upon so much of the foreign income as constitutes accumulated profits, according to the definition of the statute. It follows that plaintiff is not entitled to recover and its petition is, accordingly, dismissed.

It is so ordered.

JONES, WHITAKER, and LITTLETON, Judges, concur.

WHALEY, Chief Justice (dissenting).

I am of the opinion that the decision in the case of International Milling Co. v. United States, 27 F.Supp. 592, 89 Ct.Cl. 128, is correct. I can see no justification for overruling that decision because the Department has refused to follow it. Congress has not changed the law in subsequent enactments which tends to show acquiescence in that decision. The mere fact that the Department refused to accept the decision is not persuasive in changing the ruling of the Court. The decision has been uniformly applied by other Courts as shown in the majority opinion.