## COCA-COLA CO. v. UNITED STATES.

### No. 45208.

Court of Claims.

Oct. 5, 1942.

John E. McClure, of Washington, D. C. (O. H. Chmillon, David W. Richmond, and Miller & Chevalier, all of Washington, D. C., Spalding, Sibley, Troutman & Brock, of Atlanta, Ga., and Maud Ellen White, of Washington, D. C., on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

The question is whether a transfer of assets by a foreign subsidiary to a domestic subsidiary of plaintiff in exchange for a stock issue of the domestic subsidiary followed by a dividend of such stock to plaintiff should, in the circumstances of this case, be treated as a taxable dividend to plaintiff or as a transfer of assets through reorganization and hence nontaxable under the provisions of section 112(g) of the Revenue Act of 1928, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Acts, page 379.

Plaintiff is a Delaware corporation which was organized in 1919 and which since that time has been engaged with its subsidiaries in the manufacturing, selling, bottling, and marketing of a syrup and soft drink under the trade-mark "Coca-Cola." In 1923 it organized the Coca-Cola Company of Canada, Ltd., hereinafter referred to as the "Canadian Company," and since that time has owned the entire stock of the Canadian Company. Prior to 1927, there were approximately 1,100 plants for the bottling of Coca-Cola throughout the United States, all of which with one or two exceptions were owned independently of plaintiff. Some of these bottling plants were not being efficiently and profitably operated. About 1926, plaintiff decided upon an expansion program under which it would acquire bottling plants located at strategic points throughout the United States and put them on a profitable operating basis as an example for other outside bottlers of Coca-Cola. In order to acquire and develop these bottling plants, plaintiff organized The Rohawa Company in 1926, all of its stock being owned by plaintiff.

The Rohawa Company was dependent on plaintiff for financing and it was necessary in order to enable that company to purchase and finance the bottling plants for plaintiff to make capital contributions to it from time to time. These contributions were very substantial, as shown from our findings. In furtherance of the major purpose for which it was formed, The Rohawa Company acquired eighteen bottling companies during the period from 1928 to 1933. Prior to 1934, these bottling companies had either operated at a loss or at most had shown only a small profit. On the other hand, over the period of its existence, plaintiff's operation as a whole had been very successful and the same was true of its foreign subsidiary, the Canadian Company, which had a surplus as of December 31, 1930, of over $5,500,000.

In 1931, when The Rohawa Company was still carrying out its policy of purchasing bottling companies and needed funds with which to finance its operation, plaintiff decided upon a plan through which assets having a value of $5,109,608 would be transferred from the Canadian Company to The Rohawa Company. This transaction was carried out in the following manner: The capital stock of The Rohawa Company which was then twenty shares was increased to fifty shares and on June 27, 1931, it issued the thirty additional shares to the Canadian Company for class A stock of plaintiff and United States bonds which had a total value at that time of $5,109,608. Immediately after the tranfer the Canadian Company distributed the thirty shares of Rohawa stock to plaintiff without the surrender by plaintiff of any of the stock which it owned in the Canadian Company. All of these transactions were carried out in pursuance of a plan evolved by plaintiff which controlled all of the corporations in question. Thereafter, all of the corporations remained in existence and continued to carry on their normal functions as theretofore. None of these assets received by The Rohawa Company from the Canadian Company was distributed to plaintiff by dividends or otherwise in 1931.

The Commissioner of Internal Revenue determined that the amount of $5,109,608, representing the fair market value of the

thirty shares of stock of the Rohawa Company which had been distributed to plaintiff as shown above, constituted a taxable dividend from a foreign corporation and included it in plaintiff's taxable income for 1931. The contention of plaintiff is that the transaction by which this stock came to it was in pursuance of a plan of reorganization as defined by section 112(i) (1) (B) of the Revenue Act of 1928, supra, and that since it was in pursuance of that plan of reorganization the distribution was non-taxable under section 112(g) of the same act.

The Revenue Act of 1928 contains the following provisions with respect to re-organizations and the distribution of stock in pursuance of a plan of reorganization:

Sec. 112(i)—

"(1) The term 'reorganization' means * * * (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred. * * *

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation."

Sec. 112 "(g) Distribution of Stock on Reorganization. If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized."

An examination of this transaction shows that it comes clearly within the wording of the definition of a reorganization as set out above in that the Canadian Company transferred a part of its assets to The Rohawa Company and immediately after the transaction the transferor (the Canadian Company), or its sole stockholder (plaintiff), was in control of the transferee (The Rohawa Company), and that both The Rohawa Company and the Canadian Company were parties to the reorganization as defined by section 112(i) (2) set out above. The transaction also comes within section 112(g), supra, in that in pursuance of the same plan the Canadian Company distributed to its sole stockholder, plaintiff, the shares of stock of The Rohawa Company received by it without the surrender by plaintiff of any of the stock of the Canadian Company which it then owned. In form, therefore, it is clear that the transaction was a reorganization and in fact defendant admits that it falls "within the literal language of the reorganization provision." The position of the Government is that this so-called plan of reorganization was not a real plan but was conceived and carried out with the main purpose of tax avoidance and was not within the intent of the statute providing that such transactions do not result in taxable gain, or, as stated at one place in its brief, "The whole transaction was in reality a sham and it should be disregarded in determining plaintiff's tax liability."

We have, therefore, a situation where plaintiff has brought itself within the language of the statute which would make the transaction tax exempt, but where the defense is presented that it comes within the statute only because what was done was a mere sham or subterfuge designed for the purpose of tax avoidance. Admittedly, and we have so found as a fact, the transaction was carried out in this particular form in order to minimize the tax thereon. Where transactions are carried out in that manner, we should scrutinize the transaction closely in order to determine whether the statute has been strictly complied with. In other words, the oft-repeated principle "Men must turn square corners when they deal with the Government" is applicable. Rock Island, Arkansas & Louisiana R. Co. v. United States, 254 U.S. 141, 41 S.Ct. 55, 56, 65 L.Ed. 188. To vary the illustration, the bridge has been crossed safely by plaintiff insofar as the letter of the statute is concerned and it remains only to determine whether it was a sham or a real crossing. The fact that the transaction was carried out in this particular manner in order to make its taxes as low as possible is not necessarily fatal to plaintiff's claim. Helvering v. Gregory, 2 Cir., 69 F.2d 809, affirmed in Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, and Chisholm v. Commissioner, 2 Cir., 79 F.2d 14, 101 A.L.R. 200. The same cases, however, are authority for the proposition that the transactions must be real and, as the court said in Helvering v. Gregory, supra, must be "undertaken for reasons

germane to the conduct of the venture in hand." [69 F.2d 811.]

We are convinced and have found as a fact that the underlying purpose for the transaction in question was of a business nature, namely, the transfer of funds to The Rohawa Company from the Canadian Company for use by the former company in its business. No one of the three corporations involved in the plan of reorganization was in any sense a dummy corporation. Plaintiff had been in successful operation since 1919 and the Canadian Company had been a profitable subsidiary of plaintiff carrying on business in Canada since 1923. The Rohawa Company was formed in 1926 for the genuine business purpose of acquiring and operating bottling plants and had been engaged in operations of that character since that time. There were, therefore, no dummy corporations, such as were involved in Gregory v. Helvering, supra, which were set up for the purpose of the transaction and immediately liquidated when it was completed without performing any business functions. What was desired by plaintiff was to transfer surplus funds which were in the Canadian Company to The Rohawa Company and that was accomplished by the transaction. The transfer of funds to The Rohawa Company was nothing new since that had been done from time to time over the period of its existence.

It is true that in prior instances the transfers had been made directly from plaintiff to The Rohawa Company and that method could have been followed in this instance, that is, the Canadian Company could have first declared a dividend to plaintiff and then plaintiff in turn could have made the advances directly to The Rohawa Company. If carried out in that manner the dividend to plaintiff by the Canadian Company would have been taxable under section 22(d) of the Revenue Act of 1928 and apparently a part of defendant's complaint is that plaintiff did not proceed in that manner. The fact, however, that plaintiff chose a different course in carrying out a real transaction does not make the transaction any less real. Taxpayers are not required to carry out their transactions in a way that will produce the most tax for the Government, Gregory v. Helvering, supra. It is only when transactions which otherwise conform to the statute are unreal that they are condemned under the principles laid down in Gregory v. Helvering, supra. As the court said in Chisholm v. Commissioner, supra, in com-

menting on what was decided in the Gregory case: "That was the purpose [creating corporations in form only] which defeated their exemption, not the accompanying purpose to escape taxation; that purpose was legally neutral. Had they really meant to conduct a business by means of the two reorganized companies, they would have escaped whatever other aim they might have had, whether to avoid taxes, or to regenerate the world." [79 F.2d 15, 101 A.L.R. 200] See, also, Commissioner of Internal Revenue v. Estate of Anna V. Gilmore et al., 3 Cir., 130 F.2d 791, decided August 28, 1942.

■ It would be difficult to find a case that would fall more clearly within the terms of the statute. Evidently it was the purpose of the Congress to permit through reorganization the shifting of funds or assets from one bona fide corporation to another under the same control in order to meet changing conditions and needs which might make such a transfer desirable. Such a transaction, under the conditions named in the statute, was to be treated not as income in fact but as a mere transfer of funds or assets already available.

■ Some argument is advanced by the defendant to the effect that the governing statute was a loophole provision which taxpayers were using to avoid taxes and that in recognition of this fact the provision was eliminated from the 1934 and later acts. Whatever may be the merits of that contention, we are governed in this instance by the 1928 act, and what the later acts may have contained is of no avail in this proceeding. Whatever loophole may have existed in the 1928 act which the taxpayer took advantage of in carrying out a genuine business transaction is something over which we have no control. We are not privileged to nullify a valid provision of law nor to question the wisdom of its enactment. That it was eliminated in later years does not affect this transaction which was completed while the 1928 act was still in effect.

■ In view of the above considerations, we are of the opinion that the transaction in question was a nontaxable reorganization within the meaning of the statute and that accordingly the transfer of The Rohawa Company's stock by the Canadian Company to plaintiff was not subject to tax.

For a second cause of action plaintiff states that the Commissioner of Internal Revenue improperly computed plaintiff's

foreign tax credit under section 131(f) of the Revenue Act of 1928. However, prior to the submission of the case, the Supreme Court affirmed the decision of this court in American Chicle Co. v. United States, 41 F.Supp. 537, 94 Ct.Cl. 699, and counsel for plaintiff, in his oral argument, conceded that that decision (American Chicle Co. v. United States, 316 U.S. 450, 62 S.Ct. 1144, 86 L.Ed. 1591) required an affirmance of the commissioner's action on this point.

Entry of judgment in favor of plaintiff will be withheld pending the filing of a stipulation showing the amount due in accordance with this opinion or, in the event the parties are unable to agree upon the amount, the filing of a report by a commissioner of the court.

APPENDIX A

THE KOHAWA COMPANY BALANCE SHEETS

| | March 1, 1927 (opening) | December 31, 1927 | December 31, 1928 | December 31, 1929 | December 31, 1930 | December 31, 1931 | December 31, 1932 | December 31, 1933 | December 31, 1934 | December 31, 1935 | July 31, 1936 (Before liquidation) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | | | |
| **Current:** | | | | | | | | | | | |
| Bank Account | $1,000,000.00 | $38,533.38 | $24,097.70 | $81,007.52 | $84,775.55 | $11,785.29 | $65,131.63 | $127,800.84 | $275,597.58 | $126,803.75 | |
| Notes Receivable | | 1,000,000.00 | 1,000,000.00 | | | | | | | | |
| Investment in The CC Co. Class "A" Stock | | | | | | | 16,080,576.42 | 16,120,363.42 | 5,360,903.92 | | |
| Investment in The CC Co. Common Stock | | | | | | 16,414,926.32 | | 374,711.72 | 1,319,711.72 | | |
| **Other assets:** | | | | | | | | | | | |
| Miscellaneous Notes & Accts. Receivable | | 101,336.72 | 72,650.00 | 11,336.17 | 24,000.00 | 24,000.00 | 43,600.00 | 69,418.89 | 325,921.13 | 500.00 | $500.00 |
| **Inter-company accounts receivable:** | | | | | | | | | | | |
| Total Inter-Co. Accts. Receivable | | | 127,109.83 | 327,071.49 | 272,463.39 | 419,457.64 | 513,457.54 | 1,035,188.09 | 1,532,049.83 | 1,313,001.44 | 1,447,800.19 |
| **Inter-company Investments:** | | | | | | | | | | | |
| Total Bottling Plant Investment | | | 227,091.22 | 1,705,591.22 | 3,749,952.93 | 5,592,897.03 | 5,790,642.77 | 10,392,961.87 | 10,118,354.14 | 9,037,231.76 | 9,037,231.76 |
| **Permanent assets:** | | | | | | | | | | | |
| Machinery & Equipment | | | 28,924.23 | 31,083.35 | 30,876.08 | 30,876.08 | 30,876.08 | 30,876.08 | 30,876.08 | 30,876.08 | |
| Furniture & Fixtures | | | 2,048.84 | 48.60 | 48.60 | 48.60 | 48.60 | 48.60 | 48.60 | 48.60 | |
| Subtotal | | | 28,924.23 | 32,011.95 | 30,924.68 | 30,924.68 | 30,924.68 | 30,924.68 | 30,924.68 | | |
| Reserve for Depreciation | | | 24,032.19 | 5,045.60 | 8,094.70 | 11,188.35 | 14,281.90 | 17,375.55 | 20,469.10 | | 144.76 |
| **Deferred charges:** | | | | | | | | | | | |
| Unexpired Insurance & Prepaid Expense | | 216.67 | 28,876.39 | 26,966.35 | 22,829.02 | 19,736.32 | 16,642.72 | 13,549.12 | 10,455.52 | 1,225.00 | 144.76 |
| **Total Assets** | 1,000,000.00 | 1,139,870.10 | 2,077,824.14 | 2,135,255.10 | 13,630,810.00 | 21,422,807.88 | 22,480,126.16 | 28,734,138.31 | 19,944,610.56 | 11,388,701.94 | 11,385,631.94 |
| **LIABILITIES** | | | | | | | | | | | |
| **Current:** | | | | | | | | | | | |
| Accounts Payable | | 110,997.19 | | | 727,811.27 | 2,080.00 | 9,633.00 | 2,030.00 | 1,705.10 | 4,200.00 | 1,775.00 |
| **Inter-company Accounts:** | | | | | | | | | | | |
| Reserve for Federal Income Tax | | | | 732.36 | 722.36 | 73.36 | 73.08 | 73.36 | 795.72 | 76.39 | 270.39 |
| **Capital:** | | | | | | | | | | | |
| Common Stock | 1,000,000.00 | 1,000,000.00 | 1,000,000.00 | 1,000,000.00 | | | | | | | |
| Capital Surplus | 999,000.00 | 999,081.00 | 999,081.00 | | | | | | | | |
| Earned Surplus | | 28,653.24 | 777,924.14 | 135,255.10 | | | | | | | |
| **Total Liabilities** | 1,000,000.00 | 1,139,870.10 | 2,077,824.14 | 2,135,255.10 | 13,630,810.00 | 21,422,807.80 | 22,480,126.16 | 28,734,138.31 | 19,944,610.56 | 11,388,701.94 | 11,385,631.94 |