**MEURER STEEL BARREL CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 8520.**

Circuit Court of Appeals, Third Circuit. Argued May 16, 1944. Decided July 21, 1944.

sets and realized a profit. Petitioner contends that it distributed its assets in liquidation to its stockholders with consequently no profit involved and, therefore, no tax. The pertinent parts of the Revenue Act of 1936 are set out in the footnote.[1]

The Tax Court found the following facts, among others: The petitioner was a New York corporation. It was engaged in the manufacture of steel barrels with its plant located at Newark, New Jersey. It started in business in 1914. In 1936 most of its stock was held by the Meurer and Young families. Charles L. Jones had 2,000 common shares out of 5,000 issued. He had received these for increasing sales. In August 1936, Mr. Jones told the petitioner's general counsel, Mr. Stern, who also represented Mrs. Meurer and her daughter personally, that he was going west and thought he could sell all of petitioner's shares to a competitor out there. He, therefore, wished an option on it. Mr. Stern conferred with the other shareholders. After further negotiations, an option agreement to Jones was executed January 12, 1937. The option recited that Jones desired an option "to acquire (directly or indirectly as hereinafter set forth) all the assets and good will" of the petitioner with the exception of securities owned as investments by the petitioner and a patent claim against the United States which was in litigation in the Court of Claims. Mr. Stern, in his discussions with some of the shareholders informed them that he would never recommend the sale by the corporation because of the "possible extraordinary taxes that would have to be paid." On July 9, 1937 at a special shareholders meeting at the home of the president, Mrs. Meurer, the latter stated that she believed it desirable for the petitioner to retire from the barrel business and that Mr. Stern was about ready

Emanuel A. Stern, of New York City, for petitioner.

Louise Foster, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before DOBIE and McLAUGHLIN, Circuit Judges and KALODNER, District Judge.

## McLAUGHLIN, Circuit Judge.

The dispute here centers around the disposal of the taxpayer's business. The Tax Court found that the petitioner sold its assets

---

[1] "Sec. 22. Gross Income

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * *"

"Sec. III. Determination of Amount of, and Recognition of, Gain or Loss

"(a) Computation of Gain or Loss. The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain, * * *."

"Sec. 112. Recognition of Gain or Loss

"(a) General Rule. Upon the sale or exchange of property the entire amount of the gain or loss, determined under section III, shall be recognized, except as hereinafter provided in this section." 26 U.S.C.A. Int.Rev.Acts, pages 825, 854, 855.

to submit a plan. On the same day, the option to Jones was extended to July 19, 1937, in order that terms of a contract of sale could be negotiated.

On July 15, 1937, Mr. Stern submitted to the shareholders his plan for complete liquidation and dissolution and the plan was approved. On July 17, 1937, five of petitioner's shareholders formed a partnership for the stated purpose of engaging, commencing July 19, 1937, in the business of manufacturing steel barrels at the same location in Newark as petitioner and under the name Meurer Steel Barrel Co. The petitioner transferred all of the assets comprising its steel barrel business, including good will and right to the use of its name, of the net value of $500,000, to the partnership. The members of the partnership assumed petitioner's liabilities with some exceptions. On the same day, Mr. Jones assigned his option to Rheem Manufacturing Co., a California competitor of petitioner. The option was extended to July 26, 1937. The purchaser was advised of the transfer of the assets of the petitioner to the partnership. It was immaterial to the purchaser from whom it purchased the assets, but assets, and not stock, was what it wished to buy. A contract of purchase was signed by Rheem Co. July 17, 1937, and by the co-partners on July 22, 1937. On August 6, 1937, all the assets embracing the steel barrel manufacturing business were transferrd to Rheem. The business was conducted from July 17, 1937, to July 30, 1937, by the co-partnership. After the assets of the business were sold by the partnership, the petitioner proceeded with dissolution and the liquidation of its remaining assets.

The above brief recital tells the story although it fails to do justice to the meticulous nicety with which the petitioner performed most of the elaborate detail involved in, the transfer of the corporate assets to the partnership, the dissolution of the taxpayer, the distribution of liquidation dividends, etc. The arrangement was perhaps too elaborate. From start to finish, as the Tax Court found, there is substantial indication of a unified operation which had as its goal the sale of petitioner's assets free from the taxes which would ordinarily arise. The Tax Court, on the facts before it, had ample reason for deciding that from the times Jones secured his option designed to acquire the assets and good will of the taxpayer, directly or in-directly, the transaction proceeded with that end in view. As it advanced, the other objective, namely, that of avoiding taxes on the profit arising out of the contemplated disposal of the assets, became the more clearly defined, the more it was formaly concealed behind the mechanics of the disposal of the corporation to the partnership and the continuance of the latter in business for two weeks, with the assets then turned over to Rheem Co.

Appellant urges, Chisholm v. Commissioner, 2 Cir., 79 F.2d 14, 101 A.L.R. 200, as supporting its position. In that case, however, the partnership was bona fide. There the parties had been discussing formation of a partnership for some six or eight months prior to actually so doing, and "this proposal" as Judge Learned Hand said for the court on page 15 of 79 F.2d, "had nothing to do with taxation." The court found as to the partnership, 79 F.2d at page 15, that "the purpose was certainly to form an enduring firm which should continue to hold its joint principal and to invest and reinvest it." As to the continuance of the partnership, in that case, after the sale of the assets, the court said also on page 15 of 79 F.2d:

"The firm was not then dissolved, nor has it been since; the brothers have continued to hold its assets in common as partners; they have bought and sold securities with the capital; they have not distributed any principal; whether they have distributed any earnings does not appear."

The other case relied on by petitioner is Commissioner v. Falcon Co., 5 Cir., 127 F.2d 277. There a corporation had refused to sell certain oil leases. It later distributed them to its stockholders as partial liquidating dividends. Thereafter the stockholders themselves sold the leases to a purchaser, whose offer had been refused by the corporation. The court held that the corporation was not liable for a tax on the gain from the sale. In other words, that the acts in that case were unrelated and not part of an anticipatory plan.

We agree that even if the partnership in this matter was formed to avoid taxes, the motive of the taxpayer would not alter the result or make unlawful what the statute allows. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. As Judge Learned Hand said in the Chisholm case, supra, "The question always is whether the transaction under scrutiny is in fact what it appears to

be in form. * * *" The partnership involved in this appeal is merely an ingenious method adopted for the sale of the corporate assets. The shrewd preconceived plan does not effectively disguise this primary intent. The evidence gives solid foundation for such finding by the Tax Court which calls for its affirmance under Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, rehearing denied 321 U.S. 231, 64 S.Ct. 495.

Petitioner urges as an alternative issue that the Commissioner's deficiency determination arising out of the above is barred by Section 275(b), Revenue Act 1936, found in footnote No. 2.[2]

■ The petitioner, stating that it was in dissolution, did request in writing a prompt assessment and such request was made after the return had been filed. By Section 275 (b), in such circumstances the tax must be assessed within eighteen months of the request. The present deficiency was not found until after such period had expired. However, under the facts of this case, Section 275(c), below quoted, is applicable because the petitioner failed to include on its return the profit from the sale of its assets. That profit, as found by the Commissioner and not disproved, amounts to considerably more than 25% of its gross income as set out in the return. In such situation, the tax may be assessed at any time within five years after the return is filed. The deficiency was established well within that extended date.

■ This view as to the expansion of the eighteen months limitation under Section 275(b) by 275(c) is supported by the decisions. In Ewald v. Commissioner, 6 Cir., April 3, 1944, 141 F.2d 750, the legislative background of Section 275(c) was gone into at length and then the court said at page 753 of 141 F.2d:

"It is clear that it was the congressional purpose to fix a longer period of limitation regardless of the intention of the taxpayer where the sum omitted from gross income was 25 percent or more. As we view it the act is so plain that it can have but one interpretation. The word 'omits' is in no way qualified by the context of the Revenue Act. If it had been the intention of the framers of the act to qualify it so as to apply only to negligent omission, the word 'negligently' easily could have been inserted. Ordinarily the word 'omit' means to disregard, to fail, forbear, neglect to mention, or to fail to insert or include. In fact, the meaning of the word includes the failure to do all things that could be done under the circumstances."

The earlier case of Foster's Estate v. Commissioner, 5 Cir., 131 F.2d 405, also construed Section 275(c) as limiting the eighteen months provision found in 275(b).

The decision of the Tax Court is affirmed.

---

[2] "Sec. 275. Period of Limitation Upon Assessment and Collection. Except as provided in section 276—

"(a) General rule. The amount of income taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

"(b) Request for prompt assessment. In the case of income received during the lifetime of a decedent, or by his estate during the period of administration, or by a corporation, the tax shall be assessed, and any proceeding in court without assessment for the collection of such tax shall be begun, within eighteen months after written request therefor (filed after the return is made) by the executor, administrator, or other fiduciary representing the estate of such decedent, or by the corporation, but not after the expiration of three years after the return was filed. This subsection shall not apply in the case of a corporation unless—

"(1) Such written request notifies the Commissioner that the corporation contemplates dissolution at or before the expiration of such 18 months' period; and

"(2) The dissolution is in good faith begun before the expiration of such 18 months' period; and

"(3) The dissolution is completed.

"(c) Omission from gross income. If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed." 26 U.S.C.A. Int.Rev. Acts, page 918.