Littleton, Judge,
delivered the opinion of the court:
The plaintiff, a corporation, sues for $32,289.85, with interest thereon, which represents alleged overpayments of Federal income taxes for 1947 and 1948. The issue presented is whether certain “over-riding royalties” paid by plaintiff in 1947 and 1948 are deductible as ordinary and necessary expenses under section 23 (a) (1) (A) of the Internal Revenue Code, (26 U. S. C. Sec. 23 (a)). The facts have been stipulated and those material may be summarized as follows: The Ingle Coal Company, plaintiff’s predecessor, (hereinafter sometimes referred to as the old corporation) was a family corporation. All its stock was held by members of the Ingle family consisting of two brothers, two sisters, and the children of the brothers. The old corporation was engaged in the business of mining bituminous coal on lands held under a lease (not acquired from the Ingle family) beginning on June 1,1940. A royalty of five cents a ton was being paid the lessor under the lease. The business had appreciated considerably in value and in the spring of 1942, an offer of $1,000,000 was made to the old corporation for its assets. The offer was rejected. The stockholders of plaintiff’s predecessor decided to liquidate the corporation, transfer its assets and liabilities to the stockholders who would then transfer them to a new corporation to be organized in exchange for the stock of the new corporation and a contract obligating the new corporation to pay named individuals, who were then the stockholders, five cents a ton royalty, in addition to the royalty stipulated in the lease, on the coal thereafter mined under the above lease.
This plan was adopted and consummated for the purpose of reducing taxes, assuring a more definite income to Katherine I. Mitchell and Frances I. Bebb, two of the stockholders, and allowing the disposition of the stock, for a lesser price, and still retaining an interest in the coal business.
*124 A stockholders’ meeting of the old corporation was held on June 30, 1942, and a resolution was adopted that the corporation discontinue business and that its assets and liabilities be distributed to the stockholders, or their nominee, in proportion to their respective stock holdings. The president and secretary were authorized and directed to make all necessary transfers, conveyances and assignments. The stockholders agreed to accept the proposed distribution, and individually authorized the transfer and conveyance of the assets and liabilities to the plaintiff as their nominee. On the same day the directors of the plaintiff met, and after organizing and electing officers, received and accepted a proposal by the stockholders of the old corporation to convey the assets that had been distributed to their nominee, the plaintiff, to plaintiff in consideration of the assumption by the plaintiff of the liabilities assumed by them in the liquidation of the predecessor corporation; the issuance of the plaintiff’s stock in the same proportion as they had held stock in the old corporation, and also a separate agreement by the new corporation to pay them in proportion to their stock holdings in the old corporation a royalty of five cents a ton on the coal mined under the lease. Four of the stockholders also agreed to subscribe to 500 additional shares of the plaintiff’s stock. The necessary legal documents for carrying out the above plan were duly executed.
The plaintiff paid the named individuals in the contract, who had been the stockholders of the old corporation and were then plaintiff’s stockholders, five cents a ton royalty on the coal mined under the lease (hereinafter referred to as over-riding royalties), in addition to the five cents a ton paid to the original lessor, and claimed a deduction therefor under section 23 (a) (1) (A) for the period from July 1, 1942, to December 31, 1942, and for the year 1943. The Commissioner of Internal Kevenue allowed the royalties paid to the original lessor but disallowed the over-riding royalties. The Tax Court in Ingle Coal Corporation v. Commissioner, 10 T. C. 1199, held that the over-riding royalties paid to the stockholders under the agreement were not an ordinary and necessary expense and were in substance a nondeductible dividend distribution. The United States Court of Appeals *125 for the Seventh Circuit in Ingle Coal Corporation v. Commissioner, 174 F. 2d 569, affirmed tbe Tax Court on the same ground.
Katherine I. Mitchell, recipient of 25 percent of the overriding royalties, died on May 5,1943. Her stock was sold to other stockholders of the plaintiff and her rights to the over-riding royalties were distributed to her heirs and legatees. On June 28,1944, Frances I. Bebb, recipient of 25 percent of the over-riding royalties, donated to each of her six nephews and one niece 25 shares of her stock. The gifts upset the equality of the holdings by the David Ingle and William D. Ingle branches ,of the family. On April 1,1946, the remainder of her stock was sold and the equality of holdings of the two families was again attained. She retained the over-riding royalty rights.
The over-riding royalties have been paid continuously each year since July 1, 1942. In addition to such payments dividends were paid in 1947 and 1948 in the amounts of $65,000 and $115,000, respectively.
On its Federal tax returns for the years 1947 and 1948 the plaintiff claimed, inter alia, deductions for the over-riding royalties in the amounts of $42,761.10 and $34,223.70, respectively. The Commissioner disallowed the deduction and assessed an additional tax, which was paid. A timely claim for refund was filed and after six months had expired without the Commissioner’s formal rejection this action was instituted.
The defendant contends that plaintiff cannot litigate the present claim because it is estopped by the collateral estoppel branch of the rule of res 'judicata for the reason that the material facts and the issues of law presented in the present case are the same as those previously litigated in Ingle Coal Corporation v. Commmissioner, 174 F. 2d 569. Plaintiff asserts that the material facts and the issues of law raised in the instant proceeding are not the same. Both parties cite and rely on Commissioner v. Sunnen, 333 U. S. 591.
The taxpayer in the Sunnen case, supra, had granted to a corporation in which he owned 89 percent of the stock, a nonexclusive license to manufacture and sell certain devices, covered by patents that he owned, in exchange for specified *126 royalties. At various times be assigned these royalty contracts, which were identical in all important respects, to his wife. The tax question raised by the license contracts was whether the income accruing under them should be taxed to the husband or to his wife. The Board of Tax Appeals held that the income earned on one of these contracts was not taxable to the husband. In subsequent years, after the Clifford-Horst line of decisions[1] on assignment of income, the Commissioner again taxed the income earned under the contracts to the husband. The Supreme Court, in drastically limiting the doctrine in tax cases, held that collateral estoppel did not preclude the income from the identical contract from being taxable to the husband because of a legal doctrinal change. The Court, in the Sunnen case, supra, in holding that collateral estoppel did not preclude the income from the similar contracts from being taxed to the husband, stated:
* * * But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. * * *
* * * It [collateral estoppel] must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. * * * .
* * * But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus the second proceeding may_involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to make an independent examination of the legal matters at issue. It may then reach a different result or, if consistency in decision is considered just and desirable, reliance may be placed upon the ordinary rule of stare decisis. Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same *127 bundle of legal principles that contributed to the rendering of the first judgment. * * *
The fact that 50 percent of the over-riding royalties involved in this case were paid in the taxable years in question to non-stockholders is a significant change in the material facts which entitles the plaintiff to its day in court and the consideration of the entire question in view of the subsequent developments and, therefore, the doctrine of collateral estoppel is inapplicable.
On the merits of the case we have the question of whether the payment of these over-riding royalties were an ordinary and necessary expense and therefore deductible under section 23(a) (1) (A)[2] of the Code.
The plaintiff first points out that reasonable rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity, are specifically allowed under section 23 (a) (1) (A) as an ordinary and necessary expense. Plaintiff then contends that these over-riding royalties were required to be paid for the continued use of the mine under an unconditional contract and that they were not dependent upon earnings; that they were paid for purposes of trade or business; that plaintiff did not own the land but only the right to mine it conditioned upon paying a royalty therefor, and since it is conceded that they were reasonable in amount, they should be allowed as a deduction.
The defendant contends that from a business standpoint, the entire transaction was unnecessary, and that the assumption of the contractual obligation by plaintiff was gratuitous; that the transfer by the old corporation to the stockholders was artificial; that they had no discretion other than to transfer the assets to plaintiff pursuant to the plan; that such *128 a transfer was only a step in an integrated plan and therefore was in reality a reorganization and as such, the over-riding royalty contract should be treated the same as if plaintiff’s predecessor had assumed the obligation of paying the royalties to its stockholders, which it says would clearly be a dividend distribution and not deductible; and further defendant says that to allow plaintiff to deduct these payments would pervert the statutory policy of deductions.
The criterion employed in determining whether a corporation should liquidate, recapitalize or reorganize is not necessity, but rather business prudence and convenience. Taxpayers, of course, are free to adopt any form of legal organization for the conduct of their financial affairs that they desire and may change from one to another, although the change may or may not result in a payment of a tax on the conversion. It is well settled that taxpayers have the legal right to decrease the amount of what otherwise would be their taxes, or altogether avoid them, by means which the law permits. But the means adopted are subject to scrutiny, and, in a proper case, may be ignored for tax purposes. Taxpayers are not required, however, to carry out their transactions in a way that will produce the most tax for the Government. United States v. Isham, 17 Wall. 496, 506; Gregory v. Helvering, 293 U. S. 465, 469; Commissioner v. Tower, 327 U. S. 280; Chamberlin v. Commissioner, 207 F. 2d 462, 468; Zenz v. Quinlivan, 213 F. 2d 914, 916; Coca-Cola Company v. United States, 97 C. Cls. 241, 261, 47 F. Supp. 109. The fact that the plaintiff’s predecessor corporation was voluntarily liquidated and its assets and liabilities transferred to the stockholders and immediately to the new corporation with the reservation of the over-riding royalties does not necessarily prevent the deduction. Skemp v. Commissioner, 168 F. 2d 598; Brown v. Commissioner, 180 F. 2d 926; Stearns Magnetic Mfg. Co. v. Commissioner, 208 F. 2d 849; Felix v. Commissioner, 21 T. C. 794, and the cases above cited. Also, the fact that plaintiff was a family corporation does not mean that its stockholders were disqualified or precluded from contracting with it as long as the arrangement was fair and reasonable judged by standards of a transaction entered into by parties dealing at *129 arm’s length, and where in substance and in fact the stockholders had something to give in return for what they received. Not only do the cases support this statement but the Commissioner has so ruled. O. D. 440 C. B. Jan.-June 1920, 215; A. & A. Tool & Supply Co. v. Commissioner, 182 F. 2d 300; J. H. Robinson Truck Lines v. Commissioner, 183 F. 2d 739; Commissioner v. Thomas Flexible Coupling Co., 14 T. C. 802, aff’d 198 F. 2d 350; Stearns Magnetic Mfg. Co. v. Commissioner, supra, at p. 852; Differential Steel Car Co. v. Commissioner, 16 T. C. 413.
It is also well settled, however, that for the purpose of the proper administration of the taxing statutes, transactions between close or family corporations and its stockholders are subject to special scrutiny to determine their true purpose and effect; that transitory phases of an arrangement that add nothing of substance to the completed affair should be disregarded for tax purposes, and that substance and reality should prevail over form and sham. Gregory v. Helvering, supra; Minnesota Tea Co. v. Helvering, 302 U. S. 609; Griffiths v. Commissioner, 308 U. S. 355; Higgins v. Smith, 308 U. S. 473; Helvering v. Alabama Asphaltic Limestone Co., 315 U. S. 179; Bazley v. Commissioner, 331 U. S. 737.
Viewing the facts of this case in the light of these precepts we conclude that the transaction involved in this case was without substance and was a sham. Although it falls within the literal language of the applicable sections of the Code the recognition of the transaction for tax purposes would, in our opinion, exalt artificiality over reality. The transaction had no genuine business purpose. The old corporation owned the lease and had the right to mine the coal thereunder, and the circulatory transaction, motivated by personal reasons, was simply an empty device designed to convert nondeductible dividends into deductible royalty payments. When we view this transfer in the light of all the facts and circumstances we find it to have been absolutely without substance, and we believe that the defendant correctly asserts that the over-riding royalty contracts should be treated the same as if the plaintiff’s predecessor corporation had assumed the obligation of paying the royalties to *130 its stockholders. As such the agreement lacked real consideration, was gratuitous, and was in reality an arrangement for a distribution of dividends or profits in the guise of royalty payments. Gregory v. Helvering, supra; Minnesota Tea Co. v. Helvering, supra; Griffiths v. Commissioner, supra; Higgins v. Smith, supra; Helvering v. Alabama Asphaltic Limestone Co., supra; Bazley v. Commissioner, supra; and Ingle Coal Corporation v. Commissioner, supra. The fact that 50 percent of the so-called over-riding royalty payments were made in 1943,1944,1946 and thereafter, to members of the general family who were not stockholders does not in the circumstances require the allowance of a deduction therefor by plaintiff as an ordinary and necessary expense. Since we have ignored the entire transaction and considered the plaintiff to be in reality the same as its predecessor, and therefore consider the assumption of the obligation to pay the over-riding royalties as gratuitous for tax purposes, the payments of the over-riding royalties were not then and are not now an ordinary and necessary expense within the meaning of the taxing statutes and are not deductible under section 23(a) (1) (A) of the Code. Cf. Interstate Transit Lines v. Commissioner, 319 U. S. 590; Friedman v. Delaney, 171 F. 2d 269.
The plaintiff is not entitled to recover and its petition is dismissed.
It is so ordered.
Laramore, Judge; and Jones, Chief Judge, concur.

 Helvering v. Clifford, 309 U. S. 331; Helvering v. Horst, 311 U. S. 112; Helvering v. Eubank, 311 U. S. 122; Harrison v. Schaffner, 312 U. S. 579; Commissioner v. Tower, 327 U. S. 280; and Lusthaus v. Commissioner, 327 U. S. 293.

 § 23. “Deductions from gross income. In computing net income there shall be allowed as deductions: (a) Expenses. (1) Trade or business expenses. (A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for » * * payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * »'*”