ILLINOIS AGRICULTURAL HOLDING CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 8025.

Circuit Court of Appeals, Seventh Circuit.

Dec. 7, 1942.

C. C. Chapelle, Paul E. Mathias, and Harry Meloy, all of Chicago, Ill., for petitioner.

J. P. Wenchel and Charles E. Lowery, both of Washington, D. C., for respondent.

Homer Miller, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Newton K. Fox, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

The sole question presented by this petition to review a decision of the United States Tax Court is whether the distribution of certain funds by petitioner constituted payments in the nature of dividends or of ordinary and necessary business expenses.

Petitioner is, as its name implies, a holding company, organized under the Business Corporation Act of Illinois, Ill.Rev.Stat. 1941, c. 32, § 157.1 et seq., to hold and deal in the securities of other corporations. It is an affiliate of the Illinois Agricultural Association, which is a non-profit corporation organized under the Illinois laws to promote the welfare of agriculture in that State, with a membership of about 63,000 whose dues constitute its principal source of revenue.

Petitioner states that it was organized during the course of the carrying out of a plan formulated by the Association to set up an old-line legal reserve life insurance company upon a capital stock basis, the earnings of which, ordinarily accruing to shareholders, might be distributed to members of the Association in proportion to the amount of their insurance with the company, thereby converting the old-line legal reserve company into a cooperative insurance company, paying its earnings as patronage dividends to members of the Association having policies with the company.

In carrying out its plan, the Association brought about the incorporation of petitioner, with an authorized capital of 2000 shares of first preferred stock of a par value of $25; 600 shares of second preferred at $100 par value; and 3000 shares of common of no par value. The first preferred was sold at par to various County Farm Bureaus and individuals in Illinois; the Association took all the second preferred at par and all the common for $5 a share. Thus the total proceeds from the

sale of petitioner's stock aggregated $125,-000.

With the proceeds from the sale of its own stock, petitioner purchased the entire stock (4000 shares with a par value of $25) of the Country Life Insurance Company which was also organized under the laws of Illinois, giving it a capital of $100,000 and a surplus of $25,000. In order to make possible the distribution of profits from the insurance company among the policy-holder members of the Association, petitioner and the latter entered into a contract providing for the following distribution of all dividends received by petitioner on its stock in the insurance company:

1. Payment of all proper corporate expenditures for management, administration and contractual obligations, including taxes and fees.

2. Payment of annual cumulative dividends of 7% on both classes of preferred stock, and 35 cents a share on the common, all of which totalled $8,750 a year.

3. Setting aside annually in a surplus fund, at the option of petitioner, not to exceed 10% of the annual gross dividends, up to a total surplus fund of $150,000, to be used only for increasing the capital stock of the insurance company.

4. Apportionment of the balance between certain classes of policyholders.

a. 25% among Association members in good standing at the time of the distribution, who were also policy holders, according to the ratio between the policy holder's gross annual premium and the total gross annual premiums of all policies held by Association members.

b. Remaining 75% among the holders of charter policies, those being the first 8000 policies issued, in accordance with the provisions of a non-transferable certificate of participation issued to each charter policy holder.

The contract also provided that petitioner would not sell or transfer the insurance company stock during the term of the agreement without the consent of the Association, and the charter policy holders, and that it would remain in effect as long as the last charter policy. It was further agreed between the parties that the Association, which had sponsored and was interested in the insurance company, would promote the sale of policies to its members, but without any expense to itself, and that the Association should furnish petitioner with lists of members in good standing entitled to share in the distribution of the profits, without expense to petitioner.

Petitioner received dividends on the insurance stock amounting to $72,000 in 1936, and $83,000 in 1937. After payment of prior obligations, in accordance with the provisions of the agreement, there remained for distribution among the member and charter policy holders, the sums of $58,122 and $69,667 for the respective years, which amounts were duly distributed. In filing its income tax returns for the two years, petitioner claimed deductions on account of the respective distributions as ordinary and necessary business expenditures, pursuant to certain contractual obligations, claiming a dividend-paid credit of $8750 for each year. The Commissioner thereupon declared a deficiency as to each year resulting from his disallowance of the business expense item, which he contended was, instead, a distribution of profits in the nature of dividend distributions. He did, however, increase the dividend-paid credit by the amount of the disallowed business expense item, and he also allowed the 85% dividends-received credit permitted by § 26(b) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Act, page 836, on dividends received from a domestic corporation subject to taxation under the Act.

The Tax Court upheld the deficiencies asserted by the Commissioner, holding that the distributions were of profits rather than of deductible business expenses. We think this is the only reasonable interpretation of the facts. It is clear that the payments, claimed by petitioner to be necessary business expenses, pursuant to contract, bore no relationship whatever to the expense of obtaining the business from which the profits resulted. It is no doubt true that the promise of what amounts to a rebate from profits induced many Association members to buy their insurance from the Company in the hope of reducing the actual expense of carrying such insurance by the proportionate distribution of profits in the nature of patronage dividends. But that is not to say that payments made in accordance with the provisions of such agreement constitute ordinary and necessary expenses in carrying on the business.

The Tax Court concluded that the facts, in effect, amounted to the constructive re-

ceipt by the Association as sole owner of the common stock of the taxpayer, of all the profits distributed in accordance with the contract. We would say that the Association, as sole common stockholder, exercised its unquestioned right to nominate others to receive all profits which it would otherwise have been entitled to receive itself as sole common stockholder, and that it could not change the character of the distributions by appointing nominees to receive such profits in accordance with a pre-existing arrangement, the result of which was to put it out of its power to receive the dividends itself.

■ To be deductible as business expenses, payments made must be both ordinary *and* necessary. Welch v. Helvering, 290 U.S. 111, 58 S.Ct. 8, 78 L.Ed. 212; Klein Co. v. Com'r, 7 Cir., 123 F.2d 871. While we will not say that ordinary and necessary expenses would never be paid by the corporation's sole stockholder instead of by itself, it seems obvious that *ordinarily,* such expenses are borne by the corporation, and we have no doubt that in this case, the Insurance Company paid all of its ordinary and necessary business expenses before distributing its profits to petitioner as its sole stockholder.

■ In emphasizing the cooperative character of the enterprise set up by the three affiliated corporations, we think petitioner confuses the issue. It is not the profits and earnings of the cooperative, non-profit Association which the Commissioner seeks to tax. Instead, it is the profits of the taxpayer, organized under the Illinois Corporation Act as a business corporation contemplating the earning of profits from its affiliated corporation, the Insurance Company, also organized as a business corporation under the Illinois Law and also contemplating the earning of profits. Those earnings remain profits in the hands of petitioner, despite the fact that by pre-existing arrangement they were diverted to other parties who would otherwise have had no right to share in them, which other parties, no doubt, were induced by such arrangement to bring their own business and perhaps that of others to the Insurance Company which earned the profits. That does not transform the resulting profits into necessary and ordinary business expenses.

Decision affirmed.