RHODE ISLAND HOSPITAL TRUST COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7876. Promulgated June 24, 1946.

*Harold B. Tanner, Esq.*, for the petitioner.
*Carl A. Stutsman, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: Petitioner contends that the purchase and retirement by Rimnik of 805 shares of its own capital stock in 1941 resulted in a long term capital loss to petitioner which it is entitled to deduct in full, since in that year the statute placed no limit on the deductibility of long term capital losses.[1] The reason set out in the deficiency notice for disallowing the claimed loss was the following:

The deduction claimed in the amount of $464,637.95 on account of an alleged long term capital loss in connection with the surrender by your corporation of 805 shares of capital stock of Rimnik Corporation, under the facts and circumstances of the case which disclose domination and control of the said corporation by your corporation, requires the non-recognition of the separate corporate entities and consequently the claimed loss does not come within the provisions of section 115 (c) of the Internal Revenue Code and is not a loss recognizable under the provisions of section 112.

Respondent's theory of the case, as elaborated at the hearing and in his brief, is that Rimnik was so dominated and controlled by petitioner that for tax purposes it should not be recognized as a separate corporate entity, under the rationale of *Higgins* v. *Smith*, 308 U. S. 473. That case involved sales of securities between an individual and his wholly owned corporation—a corporation which, as the Supreme Court said, "was his corporate self." It established the proposition that if a taxpayer elects to do business as a corporation he must accept the tax disadvantages, whereas the Government is not bound to acquiesce in the taxpayer's election, but may look at actualities and, upon determining that the form used for doing business "*is unreal or a sham,* may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute." (Italics supplied.) That decision, however, did not give the Treasury Department a free rein to recognize or not to recognize corporate entities at will. See *National Investors Corporation* v. *Hoey*, 144 Fed. (2d) 466. Disregard of a corporate entity under *Higgins* v. *Smith*, *supra*, is dependent upon a finding that it is but a fiction or a sham.

---

[1] SEC. 117 [I. R. C.]. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \* \*

(d) LIMITATION ON CAPITAL LOSSES.—Long-term capital losses shall be allowed, but short-term capital losses shall be allowed only to the extent of short-term capital gains.

\* \* \* \* \* \* \*

There can be no doubt that there were legitimate business reasons for the organization and operation of Rimnik. It was impractical for petitioner, as a banking institution, to engage in the real estate business and to hold, manage, and dispose of the real properties located in a number of states. Rimnik acquired, managed and disposed of more than 800 separate parcels of realty during the course of its existence, and its cash receipts and disbursements totaled more than $29,000,000. It had its own board of directors and officers, through whom it acted; it had its own books and records and was never subject to the control of any officers or committees of petitioner, as such. In view of the extensive business operations of Rimnik and of all these other factors, to conclude that it was but a pure fiction and a sham would stretch even the most elastic imagination beyond its limits. There is, of course, always a certain measure of control exercised by a parent corporation over its subsidiary, but we are unable to find here that kind of domination and control which would warrant a disregard of the separate corporate existence of Rimnik.

Respondent next contends that the cost of petitioner's investment in the Rimnik stock is not the proper basis for determining gain or loss upon the disposition thereof. This argument stems at least in part from his assumption that Rimnik was lacking in substance and that transactions between petitioner and Rimnik were unreal. His position is that Rimnik paid inflated prices for the properties it acquired from petitioner; and he states that, were it not for this, he would not challenge petitioner's use of its cost as its basis under section 113.

The cost of petitioner's investment in the shares retired in 1941 was $1,373.66 per share.[2] Respondent's contention that the cost is not the proper basis, for purposes of this case, appears to proceed upon the inferences he draws from the fact that Rimnik sustained large operating losses. From this he deduces, and contends, that Rimnik consistently paid in excess of the fair market value for the properties it acquired from petitioner, and that petitioner, in some undetermined amount, obtained an immediate return of a part of its capital investment. As opposed to these inferences, the record contains the positive testimony of petitioner's expert witness, the president of Rimnik, who had had years of experience in valuing real estate and who made many trips to and personal inspection of the properties acquired by Rimnik, that at no time did Rimnik pay more than the then market

---

[2] This figure multiplied by 805 shares gives a total cost of $1,105,796.30, which, less the amount of $623,875 received by petitioner, indicates a loss of $481,921.30. The loss claimed by petitioner in its return was $464,637.95. The return is not in evidence, but respondent on brief explained that because certain losses sustained by Rimnik in 1933 and 1934, aggregating $41,962.04, were availed of by petitioner in consolidated tax returns, petitioner had reduced its basis by the $17,283.35 thereof allocable to the 805 shares; and accordingly the loss claimed on the return was computed on an adjusted cost basis of $1,088,512.95.

value of the properties. Respondent produced no witnesses, expert or otherwise, and repeated attempts upon cross-examination were not successful in weakening this testimony. The operating losses of Rimnik were satisfactorily explained by the fact that Rimnik operated in a falling real estate market. We think that petitioner used the proper basis in computing its loss.

Finally, respondent contends that section 112 (b) (6) of the code [3] operates to prevent recognition of the loss. That section provides, in substance, that no gain or loss is to be recognized upon the receipt by a corporation of property distributed in complete liquidation of a subsidiary corporation. It is applicable to a distribution which is one of a series of distributions by the liquidating corporation in complete cancellation or redemption of all its stock in accordance with a plan of liquidation carried out within three years, if the parent corporation owns at least 80 per cent of the stock continuously from the adoption of the plan until completion of the liquidation. Respondent argues that there was a plan of liquidation at the time of the 1941 stock retirement; that the 1941, 1942, and 1944 stock transactions were all but steps in the series of distributions under the plan; that the sale of 25 per cent of stock in 1944 to Carpenter was for the sole purpose of breaking the affiliation between petitioner and Rimnik and was lacking in *bona fides;* and that therefore petitioner at all times owned more than 80 per cent of the stock in Rimnik.

It is unnecessary that we pass upon all these contentions, for if any element is lacking it is sufficient to render the statute inapplicable. We are not here directly concerned with whether petitioner suffered

---

[3] SEC. 112. RECOGNITION OF GAIN OR LOSS.

    \*     \*     \*     \*     \*     \*     \*

  (b) EXCHANGES SOLELY IN KIND.—

    \*     \*     \*     \*     \*     \*     \*

  (6) PROPERTY RECEIVED BY CORPORATION ON COMPLETE LIQUIDATION OF ANOTHER.—No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if—

  (A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except non-voting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property ; and

    \*     \*     \*     \*     \*     \*     \*

  (D) such distribution is one of a series of distributions by such other corporation in complete cancellation or redemption of all its stock in accordance with a plan of liquidation under which the transfer of all the property under the liquidation is to be completed within three years from the close of the taxable year during which is made the first of the series of distributions under the plan, except that if such transfer is not completed within such period, or if the taxpayer does not continue qualified under subparagraph (A) until the completion of such transfer, no distribution under the plan shall be considered a distribution in complete liquidation.

    \*     \*     \*     \*     \*     \*     \*

any recognizable or deductible loss in 1942 and 1944, for those years are not before us. Only the loss upon the 1941 transaction is directly in issue. Officers of Rimnik, as well as an officer of petitioner, testified that there was no connection whatever between the 1941 stock retirement transaction and the final liquidation in 1944; that there was no plan of liquidation in 1941; and that it was not then known when or definitely whether Rimnik would be finally liquidated. We see no reason to disregard their testimony, and we have found as a fact that there was no plan of liquidation in 1941 and no connection between the 1941 transaction and the final liquidation in 1944. Therefore, section 112 (b) (6) is not applicable.

It follows that respondent erred in disallowing the loss claimed by petitioner, and petitioner is accordingly sustained as to this issue.

Petitioner's claimed overpayment of $16.73 is predicated upon the fact that in determining the deficiency respondent allowed an increased deduction for capital stock tax, which had been understated in petitioner's return. Petitioner's computation of the amount of the claimed overpayment is not shown. It is alleged in the petition that the return for the year 1941 was filed and the tax paid on March 11, 1942. Respondent, in his answer, denied the allegation and avers that the date was March 16, 1942. Petitioner produced no evidence as to the time the return was filed and the date the tax was paid. The return was not offered in evidence. The petition herein was filed May 2, 1945. Petitioner has failed to demonstrate that it comes within the provisions of section 322 (d) of the code, and accordingly as to this issue the respondent is sustained.

*Decision will be entered that there is no deficiency and no overpayment.*