E. Roland Harriman, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 5779.   Promulgated December 23, 1946.

*Frank E. Barnett, Esq.*, and *Charles H. McAuliffe, Esq.*, for the petitioner.

*Scott A. Dahlquist, Esq.*, for the respondent.

OPINION.

Van Fossan, *Judge*: The respondent's position is that the issue before us is wholly one of fact and that, as a matter of fact, the distribution made by Harriman Thirty and received by the petitioner in 1940 was made in partial liquidation as one of a series of distributions in complete cancellation or redemption of a portion of its stock. He relies wholly on *Estate of Henry E. Mills*, 4 T. C. 820.

The petitioner agrees that the issue is solely a factual one, but contends that, by the very terms of the agreement of January 31, 1930, between Harriman Fifteen and Harriman Thirty, it was impossible to consider, project, or formulate any plan of complete liquidation of Harriman Thirty until the agreement was fulfilled. He further asserts that the distributions made in 1934, 1937, and 1939 were wholly separate and independent actions and had no relation in intent or in import either to each other or to the final distribution in 1940.

The vital and decisive factor in the problem before us is found in the obligations of Harriman Fifteen to Harriman Thirty as contained in the contract of January 31, 1930. The petitioner argues that the contractual burden imposed therein compelled Harriman Thirty to assume and maintain a position and policy wholly foreign to and inconsistent with the idea of complete liquidation, until Harriman Fifteen was relieved from its guaranty to insure the realization of $1,681,896.52 from certain assets of Harriman Thirty assigned to it by Harriman, Inc. The petitioner concedes, and the evidence shows, that the general intent and purpose of Harriman Thirty was to liquidate its assets as rapidly as possible and ultimately to accomplish a complete liquidation, but he contends that such a "floating intention" was by no means the equivalent of the "plan of liquidation" contemplated by the statute.

While the factual question is a close one, we think that the petitioner's argument is sound and that it is well supported by the facts of record. The respondent relies on the assumption that the 1940 distribution was one of a series of distributions in complete cancellation and redemption of all or a portion of Harriman Thirty's stock, as

defined in the statute,[1] and thus limits himself to the theory that the 1940 distribution was directly related to the distributions of 1934, 1937, and 1939 and that all such distributions were parts of an integrated plan of liquidation.

The facts show that, in the due and ordinary course of reducing Harriman Thirty's assets to cash, certain amounts were accumulated and, at intervals, distributions of portions of such accumulations were made to stockholders. However, the profits and fees and the accounts receivable guaranteed and the securities agreed to be purchased were outstanding and were not definitely ascertained in amount, nor was the guarantor released from its guaranty until 1940. When such release became a certainty, then, and only then, could Harriman Thirty take steps to effect a complete liquidation. The *plan* of liquidation was created at that time and the distribution made to the petitioner in 1940 was made pursuant to *that* plan.

There is little suggestion, and certainly no proof, that the various actions taken by Harriman, Inc., Harriman Fifteen, Harriman Thirty, and Brown-Harriman were controlled by a single person or group of persons, or even by the same interests, and thus evidenced a scheme to defeat tax. The various phases of the liquidation show a proper business basis and cogent business reasons therefor.

*Estate of Henry E. Mills, supra,* relied upon by the respondent, turned largely on a failure of proof of error. We there held that the several distributions were made in accordance with an original plan formulated in 1930; that the distributions in 1938 were likewise so made; and that there was no "new plan, complete in itself and sufficient for the purpose of the statute." In describing the procedure there employed, we said:

Mills Oil Co. sold all of its business and business assets in 1930 and never thereafter engaged in that business or any other. It began immediately to distribute to its stockholders the proceeds from the sale as they were received. It closed out its remaining accounts, and as fast as it obtained any funds it distributed them to its stockholders. It was known from the beginning that the purchase price from the sale of the business would be realized during a limited number of years. The corporation retired its preferred stock in 1930 and in that year began a series of distributions under which its remaining property, consisting principally of the proceeds of the sale, was distributed to the common stockholders promptly as realized. The resolutions authorizing these distributions describe them as liquidating distributions and the corporation indicated in other ways that it was in the process of liquidation and dissolution. It seems pretty obvious that, following the sale, a plan was formulated under which these distributions would be made. Apparently, a part of

---

[1] SEC. 115 [I.R.C.]. DISTRIBUTION BY CORPORATIONS.

    \*       \*       \*       \*       \*       \*

    (i) DEFINITION OF PARTIAL LIQUIDATION.—As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

that plan was that when all of the payments had been received the corporation would not engage further in business, but would dissolve. No specific action on the subject of dissolution was taken until 1938, but that is not to say that, until the resolution of December 31, 1938, the corporation had no plan of liquidation or that the liquidating distributions prior to that date were not of a series in complete cancellation or redemption of all of the stock in accordance with a bona fide plan of liquidation under which the transfer of the property under the liquidation was fully contemplated. To say the least, the evidence does not negative the existence of a prior plan of which the December 31, 1938, resolution was but a concluding part. * * *

The same question was again before the court in *Williams Cochran,* 4 T. C. 942. In that case, addressing ourselves to the same basic issue as we find in the instant case, we said:

At the time of the acquisition of the first 1,256 shares of preferred stock (that is, 256 shares acquired on May 8, 1939, 100 shares acquired on August 7, 1939, and 900 shares acquired on October 12, 1939), the Gremoco Corporation had the intention of acquiring all of the preferred stock owned by the petitioner and retiring it. The plan was to purchase shares of that stock in varying amounts under the option, and to pay for them out of the proceeds of sales of Gremoco's marketable securities, which were to be made when higher prices could be realized for such securities, and to dissolve Gremoco after all of petitioner's preferred stock had been acquired in this manner. However, no specific date was set for dissolution. After Gremoco had operated under this plan, and after it had acquired the 900 shares of preferred stock on October 12, 1939, and before it acquired the 2,000 shares on November 10, 1939, the common stockholders believed that market prices for its securities had risen to the point where liquidation was justified and they then determined that Gremoco should be completely liquidated at once. Gremoco thereafter purchased the remaining 2,000 shares of petitioner's preferred stock on November 10, 1939, and a few days later, on November 20, 1939, its directors voted for immediate dissolution and the stockholders éxecuted a certificate of consent.

*     *     *     *     *     *     *

Although the stockholders of Gremoco planned to liquidate as soon as all of the preferred stock had been acquired, their plan, as it existed prior to the decision for immediate liquidation made in mid-October 1939, did not provide for completion of the liquidation within a specified time. For this reason the amounts received by the petitioner for the 1,256 shares disposed of on May 8, August 7, and October 12, 1939, were not distributions in "complete liquidation" within the meaning of section 115 (c). The complete liquidation defined in that section requires that the distributions be made in accordance with a bona fide plan of liquidation under which the transfer of the property under the liquidation is to be completed within a time specified in the plan not exceeding the period fixed in the statute; and where, as here, specification of a time limit is made after the stock has been acquired, the plan can not be given retroactive effect to cover prior distributions, *Amory L. Haskell,* 46 B. T. A. 164, 174; affd., 133 Fed. (2d) 202, such as those mentioned in this paragraph.

The block of 2,000 shares of preferred stock was disposed of on November 10, 1939, after the stockholders of Gremoco had decided to liquidate the corporation at once. The decision to liquidate at once was made sometime between October 12 and October 22, 1939, the resolution to dissolve immediately was passed on November 20, 1939, pursuant to that decision, and the corpora-

tion was dissolved as of November 30, 1939. The distribution with respect to the 2,000 shares, therefore, was a distribution in complete liquidation within the meaning of section 115 (c).

The above is particularly apt in the present case. The events on which the distributions in 1940 were based all occurred in that year. As we have observed above, the plan to effect complete liquidation originated and was consummated within that year. It can not be given retroactive effect. *Amory L. Haskell*, 46 B. T. A. 164; affd., 133 Fed. (2d) 202; *Williams Cochran, supra.* No definite date was set for liquidation prior to the actions taken in the latter part of 1940. The resolution adopted December 16, 1940, decreed dissolution of the corporation and declared a liquidating dividend of all assets after payment of all corporate liabilities, payment to be made December 27, 1940, to stockholders of record on that date upon surrender of their stock. The distribution made to the petitioner in 1940 in conformity with such resolution was in complete liquidation of his stock in Harriman Thirty and is taxable as a long term capital gain under section 115 (c), Internal Revenue Code. Cf. *Rhode Island Hospital Trust Co.*, 7 T. C. 211.

Reviewed by the Court.

*Decision will be entered under Rule 50.*