**INGLE COAL CORPORATION v. COM-MISSIONER OF INTERNAL REVENUE.**

No. 9764.

United States Court of Appeals
Seventh Circuit.

May 11, 1949.

John E. McClure, David W. Richmond, and Edward L. Updike, all of Washington, D.C. (Maude Ellen White and Miller & Chevalier, all of Washington, D. C., of counsel), for petitioner.

Theron L. Caudle, Asst. Atty. Gen., and Ellis N. Slack, Harry Baum and Harry Marselli, Sp. Assts. to Atty. Gen., for respondent.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

DUFFY, Circuit Judge.

The petitioner seeks a review of a decision of the Tax Court involving excess profits tax liability for the period from July 1, 1942, to December 31, 1942, and for the calendar year 1943.

The Ingle Coal Company was a closely held family corporation, all of whose 2000 shares of stock outstanding were owned on June 30, 1942, by members of the Ingle family consisting of two brothers, two sisters, and the children of the brothers. The two brothers were the officers and they and

the two sisters comprised the board of directors. The business of the company was mining coal, on land owned by James R. Wasson and Charlotte E. Wasson, under the terms of a 20-year lease commencing in 1940. By the terms of this lease a royalty of 5¢ per ton was payable to lessors on all coal mined.

In the spring of 1942 Ingle Coal Company received an offer of $1,000,000 for its assets. This offer was rejected, the principal reason being the substantial amount of income tax liability which the company and its stockholders would incur if such sale were consummated.

After consultation with their attorney, the stockholders evolved and decided to adopt a plan which included the formation of a new company to be known as Ingle Coal Corporation. The plan contemplated that the Ingle Coal Company distribute all its assets to its stockholders, which they in turn would transfer to the Ingle Coal Corporation. For such assets the Ingle Coal Corporation would issue its stock to the same stockholders in the same proportion in which they held stock in the Ingle Coal Company. In addition, it would assume the liabilities of the Ingle Coal Company and would agree to pay the stockholders a further or overriding royalty of 5¢ a ton in proportion to their stock holdings in the old company. It was also understood that four of the stockholders would agree to subscribe to 500 additional shares of the capital stock of the Ingle Coal Corporation to be paid for as hereinafter set forth.

At the stockholders' meeting of the Ingle Coal Company held June 30, 1942, a resolution was adopted that the company discontinue business and that its assets be distributed to the stockholders, or to their nominees, in proportion to their respective stock holdings. The president and secretary were authorized and directed to make all necessary transfers, conveyances and assignments. The stockholders agreed to accept the proposed distribution, and individually authorized the transfer and conveyance of said property to the Ingle Coal Corporation.

At the conclusion of the stockholders' meeting of the Ingle Coal Company, the same persons who were directors of the Ingle Coal Corporation met, and after organizing, and electing officers, received and accepted the proposal of the conveyance of the assets of the old company, in consideration of the issuance of petitioner's stock in the new company in the same proportion as they had held stock in the old company, and also the agreement by petitioner to pay them in proportion to their stock holdings in the old company a royalty of 5¢ a ton on all coal produced from the property. Documents carrying out the arrangement were executed between the old company, the new company, and the stockholders individually.

It was contemplated that the new company would continue to mine the property and this has been done. According to its books petitioner had accumulated earnings of $56,844 at the end of 1942 and $209,797 at the end of 1943. No dividends, as such, were paid during these periods, but petitioner under the overriding royalty agreement distributed to its stockholders $19,185 for the last six months in 1942 and $37,584 for the year 1943.

In its income tax returns petitioner deducted from its gross income the amount paid to its stockholders under the overriding royalty agreement, and the Commissioner disallowed the claimed deductions. The Tax Court sustained the Commissioner, and held that the payments were not ordinary and necessary business expenses of the corporation which could be deducted under Sec. 23(a), Internal Revenue Code, 26 U.S.C.A. § 23(a), but were in substance a non-deductible dividend distribution.

Two issues are presented for decision: (1) Whether the payments designated as overriding royalties were deductible as expenses; and (2) whether petitioner was entitled to additional invested capital of $12,500.

On the first issue we agree with the Tax Court's conclusion that the royalty payments by petitioner to its stockholders were not ordinary or necessary business expenses of the corporation, deductible from its gross income under Sec. 23(a), Internal Revenue Code, and that the transaction constituted, in substance, a non-deductible dividend distribution.

In determining tax consequences we must consider the substance rather than the form of the transaction. Here the liquidation distribution was but one step in the integrated parts of a single transaction, by which one wholly owned corporation was substituted for another. The petitioner had the same assets and the same liabilities and the same stockholders as its predecessor, except that in the creation of the new corporate set-up petitioner assumed an obligation to make additional royalty payments to these same stockholders.

Payments by a corporation to its shareholders pursuant to a contract may constitute dividend distributions notwithstanding they are labeled expenses or something else. Illinois Agricultural Holding Co. v. Commissioner of Internal Revenue, 7 Cir., 131 F.2d 583; Regensburg v. Commissioner of Internal Revenue, 2 Cir., 144 F.2d 41; Limericks, Inc., et al. v. Commissioner of Internal Revenue, 5 Cir., 165 F. 2d 483. Here the payments to the stockholders were made in the taxable years when the petitioner had accumulated earnings greatly in excess of the amounts thus paid, and such payments were computed in proportion to their stock holdings. The so-called royalty payments to them were in substance dividend payments.

Transactions between a corporation and its controlling stockholders are subject to special scrutiny. Higgins, Collector of Internal Revenue v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406. Here, what actually happened was that the stockholders acted as a conduit of title from one wholly owned corporation to another. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981.

It has been held that where a family corporation distributes its property to its stockholders who immediately sell their property to a third party, the sale is attributable to the corporation and not the stockholders. Commissioner of Internal Revenue v. Court Holding Co., supra; Wichita Terminal Elevator Co. v. Commissioner of Internal Revenue, 10 Cir., 162 F.2d 513; Meurer Steel Barrel Co., Inc., v. Commissioner of Internal Revenue, 3 Cir., 144 F.2d 282. The courts have not regarded the intervening liquidation distribution as controlling where the stockholders merely serve as the conduit for transferring property to a third party.

Here the stockholders took the liquidation distribution not for the purpose of using the property themselves but for the agreed purpose of immediately transferring ownership to another corporation as their nominee. In Helvering, Commissioner of Internal Revenue v. Alabama Asphaltic Limestone Co., 315 U.S. 179, page 184, 62 S.Ct. 540, at page 544, 86 L.Ed. 775, where the corporate property was acquired by a committee representing equity ownership, who thereafter transferred same to a new corporation, the court said:

" * * * Some contention, however, is made * * * because the properties acquired by the new corporation belonged at that time to the committee and not to the old corporation. That is true. Yet the separate steps were integrated parts of a single scheme. Transitory phases of an arrangement frequently are disregarded under these sections of the revenue acts where they add nothing of substance to the completed affair. * * *"

But even assuming that the royalty payments to the stockholders were expenses to the new corporation, they were not "ordinary and necessary" business expenses. To be deductible as business expenses, payments must be both ordinary and necessary. Illinois Agricultural Holding Co. v. Commissioner of Internal Revenue, supra, 131 F.2d page 585. The burden is on the taxpayer to clearly show the right to the claimed deductions. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607.

The expense of the royalty payments to stockholders was not "necessary." The Ingle Coal Company had the right to mine coal under the Wasson lease without paying any royalty other than that due to the lessors. The imposition of the overriding royalty on the taxpayer was not "necessary" for the continuation or the development of the business. Nor can the payments be considered "ordinary," in the sense that they were of common or frequent occurrence in the type of business in-

volved. Deputy v. Du Pont, 308 U.S. 488, 495, 60 S.Ct. 363, 84 L.Ed. 416.

Petitioner leans heavily upon the decision of this court in Skemp v. Commissioner of Internal Revenue, 7 Cir., 168 F.2d 598, but that case is clearly distinguishable. There the owner of a building conveyed it to an independent trustee-bank, retaining no control over the building, but reserving the right to rent it at a rental to be determined by the trustee. This court emphasized that there was a change in the taxpayer's economic status; that he could only continue to occupy the building by paying the amount of rent fixed by the trustee. In the case before us the transfer of property was not to an independent third party, but to a corporation which the same stockholders controlled, and who had it within their power to change or erase the overriding royalty obligations at any time that they chose to do so.

The second issue before us is whether the stock issued by petitioner to four stockholders in cancellation of indebtedness represented "new capital" under Sec. 718(a) (6), Internal Revenue Code, 26 U.S.C.A. § 718(a) (6). The Tax Court held that it did not.

In computing its excess profits tax a corporation is allowed, under Sec. 714, a credit based on a percentage of its "invested capital." The "daily invested capital" for any day is defined in Sec. 717 as "the sum of the equity invested capital for such day plus the borrowed invested capital for such day determined under Sec. 719." Under this latter section certain kinds of outstanding indebtedness are included in "borrowed capital" but only 50% of borrowed capital may be treated as "borrowed invested capital."

Sec. 718(a) defines "equity invested capital" as including money or property paid in for stock. Sec. 718(a) (6) allows an addition to the amount includable on account of invested capital 25% of "new capital" paid in during the taxable year, subject to specified limitations.

In its returns petitioners included in its equity invested capital the $50,000 stock issued in exchange for a part of the indebtedness and the Commissioner allowed the inclusion for purposes of the Sec. 714 computation. Neither the petitioner nor the Commissioner treated the $50,000 as "new capital." However, by amended petition, taxpayer asserted the right to add another 25% of the $50,000 stock to its equity invested capital. The Commissioner rejected this claim and the Tax Court sustained his decision.

Substitution of stock (equity capital) for indebtedness (borrowed capital) did not create "new capital," under Sec. 718 (a) (6). The allowance of new capital under that section was not intended to cover adjustments in existing capital.

The decision of the Tax Court is affirmed.