OPINION. Van Fossan, Judge: The sole issue in these proceedings is whether the transfers of income-producing properties to Neches and Land are to be disregarded as being shams and the earnings thereof included within the separate and community incomes of petitioner and his wife, as determined by respondent. The question thus presented is essentially one of fact and leaves little scope for legal interpretation. Petitioner organized two corporations in 1946 for the purpose of carrying on two distinct businesses in which he was at that time engaging. Land was formed to take over and operate certain rental properties which had been inherited by petitioner and otherwise to engage in real estate activities generally. Neches was organized to carry on the contracting and construction business which shortly before had been started by petitioner. Upon Land’s incorporation, petitioner transferred certain pieces of the inherited properties at the fair market value thereof determined in 1934 and 1935, less depreciation to the time of sale. Land made no payment of the principal or interest thereon during the taxable years. Shortly following the organization of both corporations, petitioner transferred to each the royalty interests in certain oil and gas wells. Thereafter as production was reached in other wells brought in on petitioner’s property, the royalty interests therein were transferred to one or the other of the corporations. Respondent does not question the validity of either organization as being a separate taxable entity nor does he seek to base his actions upon the authority granted in section 45 of the Code. Rather, respondent maintains that the transfers of income-producing properties to the corporations were not arm’s length, bona fide transactions, i. e., were mere shams; that petitioner in substance remained in possession and control of the properties and the income therefrom; that there was no purpose in the transfers other than the tax savings that would result; and that, therefore, such transfers are to be disregarded for tax purposes and the income from the properties involved included within the incomes of petitioner and his wife as respectively determined under the provisions of section 22 (a), Internal Revenue Code.[1] On the other hand, it is the position of petitioner and his wife that the controverted transfers were bona fide sales and that the method used in reporting their income was correct. There is a well established principle in tax law that a taxpayer may legally and honorably take any steps approved by the law to arrange his affairs so as to minimize his tax liability. United States v. Isham, 17 Wall. 496; Gregory v. Helvering, 293 U. S. 465. The motive of tax avoidance for entering into a particular transaction has never been held a basis for liability unless the transaction itself first establishes such liability without it. Chisholm v. Commissioner, 79 F. 2d 14. That is to say, the transaction must actually accomplish in substance that which it purports to do in form. “It is axiomatic that the reach of the income tax law is not to be circumscribed by refinements of title. * * *” See Paul G. Greene, 7 T. C. 142. Mere passage of title to income-producing property unattended by a complementary shift of entire economic benefits of ownership, both direct and indirect, will not suffice to relieve the transferor of liability for tax on the future income therefrom. Helvering v. Clifford, Jr., 309 U. S. 331. The question ultimately to be answered in determining the reality of a transaction for tax purposes was succinctly stated by the Court of Appeals in the Chisholm case as: * * * whether the transaction under scrutiny is in fact what it appears to be in form; a marriage may be a joke; a contract may be intended only to deceive others; an agreement may have a collateral defeasance. In such cases the transaction as a whole is different from its appearance. True, it is always the intent that controls; and we need not for this occasion press the difference between intent and purpose. We may assume that purpose may be the touchstone, but the purpose which counts is one which defeats or contradicts the apparent transaction, not the purpose to escape taxation which the apparent, but not the whole, transaction would realize. * * * When a taxpayer seeks to achieve a desired business or tax result, he has freedom of choice as to the form in which he will channel his business. Higgins v. Smith, 308 U. S. 473. If the taxpayer actually carries on business in the form so chosen, the Government may not deprive him of the benefits which flow therefrom unless such form be found to be but a fiction or a sham. Higgins v. Smith, supra; Rhode Island Hospital Trust Co., 7 T. C. 211. Thus, when a corporate form for carrying on business is adopted and there follows an exercise of corporate powers and the doing of some business in the ordinary sense, regardless of quantum, the corporate identity constitutes a separate taxable entity and may not be disregarded. Moline Properties, Inc. v. Commissioner, 319 U. S. 436. And the same is true whether there be one stockholder or many. For, as the Supreme Court said in National Carbide Corporation v. Commissioner, 336 U. S. 422, 429: Complete ownership of the corporation, and the control primarily dependent upon such ownership * * * are no longer of significance in determining taxability. * * * Transactions between a corporation and its sole or majority stockholder are to be carefully scrutinized, Higgins v. Smith, supra; Ingle Coal Corporation v. Commissioner, 174 F. 2d 569, lest what may appear in form have no reality in substance. There can be no doubt that Land was conceived and organized for legitimate business reasons and that the transfer to it of the rental property in question was but a step in fulfilling the purpose for which it was primarily organized. After the acquisition of the property, Land became actively engaged in the exercise of its corporate powers in carrying on the business of managing and administering such property. The profits and losses derived from its operations were, in a very real sense, the profits and losses not of petitioner but of Land. We conclude from the evidence that such transfer was a bona fide transaction entered into for business purposes. Kespondent does not contend otherwise. Indeed, any argument regarding the bona fides of the transaction under discussion is conspicuously absent from respondent’s brief. Kespondent erred in including such income within the community income of petitioner and his wife, and we so hold. The sales of royalty interests in the oil and gas wells to Neches and Land present a somewhat different picture. Neither corporation was authorized by its charter to own and operate oil properties and in an appropriate action such transactions might have been tested as to whethér they were ultra vires. Such, however, is not within our province here. The evidence shows that the sales were primarily motivated by the desire to furnish both corporations with necessary operating capital. This evidence stands uncontradicted and shows the presence of a legitimate business purpose. Moreover, the record indicates that the transactions were real, not shams, in that the income from the royalty interests so transferred appears to have been received by the corporations and utilized by them in furtherance of their corporate purposes. In fact, such income seems actually to have played an important role in maintaining the solvency and continued existence of Neches. After careful consideration of all the evidence in the light of the principles above set out, we have concluded that such evidence fully supports petitioner’s position that the sales of the royalty interests to Neches and Land were in fact realities and that the income therefrom was not the income of petitioner but of the corporations receiving and using same. Respondent erred in determining otherwise, and we so hold. Decisions will l>e entered under Rule 50. SEC. 22. GROSS INCOME. (a) Genbkal Definition. — “Gross Income” Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings In property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * » »