T.C. Memo. 2011-19

UNITED STATES TAX COURT

TONY L. ROBUCCI, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 17309-08, 17310-08,    Filed January 24, 2011.
          17311-08.


        TR, a psychiatrist, sought advice from C, a C.P.A.
specializing in tax planning for small businesses, as
to how he might minimize the tax liability arising from
his practice.  C restructured TR's practice from a sole
proprietorship to a limited liability company (LLC)
with two members: TR, owning 95 percent, and a
"manager" corporation (PC), owning 5 percent.  C also
organized a second corporation (W) to perform services
associated with TR's practice.  TR's 95-percent
interest in LLC was divided between a 10-percent
general partner interest and an 85-percent limited
partner interest attributable to intangibles associated
with the practice.  TR paid self-employment tax only on
distributions associated with his 10-percent general

_____

        [1]Cases of the following petitioners are consolidated
herewith:  T.L. Robucci & Associates, M.D., P.C., docket No.
17310-08; and Westsphere Management Corp., docket No. 17311-08.

partner interest, whereas, as a sole proprietor, he was required to pay self-employment tax on the entire net income from his psychiatric practice. See secs. 1401 and 1402, I.R.C.

R alleges that PC and W are without substance and must be disregarded for Federal tax purposes. As a result, LLC becomes a single-member LLC, which, because it did not elect association status, also must be disregarded for Federal tax purposes, and, therefore, TR's practice must be treated as a sole proprietorship for 2002-04. See sec. 301.7701-3(b)(1)(ii), Proced. & Admin. Regs. R's disregard of PC, W, and LLC would result in tax deficiencies against TR for 2002-04. R also seeks to impose a sec. 6662(a), I.R.C., penalty on TR.

1. Held: Because the organization of PC and W accomplished no significant business purpose and because PC and W were, in substance, hollow corporate shells formed primarily for tax avoidance, they are disregarded for Federal tax purposes and TR is taxable as a sole proprietor for 2002-04.

2. Held, further, TR is subject to the sec. 6662(a), I.R.C., penalty for 2002-04.

Howard O. Bernstein and Arlene M. French, for petitioners.

Matthew A. Houtsma, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge: These cases have been consolidated for purposes of trial, briefing and opinion. By notices of deficiency, respondent determined deficiencies in income tax and accuracy-related penalties as follows:

| Petitioner | Year | Deficiency | Penalty Sec. 6662(a) |
|---|---|---|---|
| Tony L. Robucci (Dr. Robucci) | 2002 | $21,292 | $4,258 |
| | 2003 | 19,978 | 3,996 |
| | 2004 | 15,755 | 3,151 |
| T.L. Robucci & Associates, M.D., P.C. (Robucci P.C.) | FYE 11/30/02 | 1,788 | 358 |
| | FYE 11/30/03 | 834 | 167 |
| | FYE 11/30/04 | 1,020 | 204 |
| Westsphere Management Corp. (Westsphere) | FYE 11/30/02 | 6,256 | 1,251 |
| | FYE 11/30/03 | 4,322 | 864 |
| | FYE 11/30/04 | 3,246 | 649 |

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts have been rounded to the nearest whole dollar.

The issues for decision are (1) whether Robucci P.C. (the comember, along with Dr. Robucci, in Tony L. Robucci, M.D. LLC (Robucci LLC)) and Westsphere, two corporations wholly owned by Dr. Robucci (sometimes the corporations) should be disregarded for Federal income tax purposes, with the result that all of the income of Robucci LLC is taxable directly to Dr. Robucci as compensation subject to self-employment tax[2] and (2) whether Dr.

---

[2]Respondent argues, alternatively, that (1) if the corporations are respected for Federal income tax purposes, he may allocate all of their income and expenses and all of the income and expenses of Robucci LLC to Dr. Robucci under the authority of sec. 482, and (2) if the corporations are respected for tax purposes and respondent's application of sec. 482 is deemed arbitrary and capricious, respondent may allocate all of the income and expenses of the corporations and Robucci LLC to

(continued...)

Robucci is liable for the accuracy-related penalty under section

6662(a) for each of the years in issue.[3]

FINDINGS OF FACT

Some facts are stipulated and are so found.  The stipulation

of facts, with accompanying exhibits, is incorporated herein by

this reference.

---

[2](...continued)
Dr. Robucci under sec. 269A.  We need not consider respondent's
alternative arguments because we shall sustain respondent's
adjustments with respect to Dr. Robucci on the basis of our
determination to disregard the corporations for Federal income
tax purposes.  Moreover, we need not otherwise concern ourselves
with respondent's determinations of deficiencies and penalties
with respect to the corporations because respondent concedes on
brief that those determinations "are whipsaw positions that
should be sustained only if the Court finds that the two
corporations should be respected for federal income tax
purposes."

[3]The deficiency notices issued to all three petitioners
disallow certain deductions, for the most part, on the ground
that the expenses in question either were not ordinary and
necessary expenses of any trade or business deductible under sec.
162 or on account of lack of substantiation.  The deficiency
notice issued to Dr. Robucci treats a portion of the expenses
deducted by Robucci LLC as deductible expenses of a sole
proprietorship operated by Dr. Robucci.  The largest expenses not
so treated (i.e., expenses disallowed to Robucci LLC and not
treated as deductible by Dr. Robucci) are the management fees
allegedly paid by Robucci LLC to the corporations (the management
fees).  The management fees remain the only expenses the
deductibility of which is still at issue.  Petitioners concede,
however, that if the management companies (i.e., the
corporations) are disregarded, the disallowance of the deductions
for the management fees is proper.  Since we shall disregard the
corporations, we accept petitioners' concession that the
disallowance of those deductions is proper.

At the time the petitions were filed, Dr. Robucci resided in Denver, Colorado. The corporations' alleged principal places of business were also in Denver, Colorado.

Background

Dr. Robucci has been a practicing psychiatrist since he completed his residency in 1996. He conducted his psychiatric practice as a sole proprietorship until 2001, and, during that period, he reported the income and expenses of his practice on his personal income tax returns.

Dr. Robucci's Meeting With Mark Carson

In the fall of 2001, a friend referred Dr. Robucci, who wanted to explore the benefits, if any, of incorporating his practice, to Mark Carson (Mr. Carson), an attorney and certified public accountant (C.P.A.), who conducted an accounting practice in Colorado through his firm, Mark H. Carson & Associates, P.C. At the time of the trial, Mr. Carson's C.P.A. firm had a client list of some 3,500 clients, mostly small businesses. Choice-of-entity planning for those clients constituted a significant portion of the firm's practice.

During his first meeting with Mr. Carson, Dr. Robucci stated that he wanted to do what was best from the standpoint of his own personal tax planning; i.e., he wanted to minimize the amount of taxes he was paying. After discussing various options to achieve that goal, Mr. Carson recommended, and persuaded Dr. Robucci to

adopt, the organizational structure, involving an LLC and two corporations, that is at issue herein.  That initial discussion also covered the possibility of structuring Dr. Robucci's practice in such a way as to reduce the amount of self-employment tax that he was paying while also minimizing any other tax liabilities that he might incur.  Dr. Robucci did not seek a second opinion from any other C.P.A.s or attorneys assessing the merits of Mr. Carson's recommendations, nor did Mr. Carson provide him with a written explanation of the need to form three separate entities.  He did explain orally to Dr. Robucci that the LLC would conduct the practice, that (for reasons not made clear to Dr. Robucci) it needed to have two members (Dr. Robucci and what became Robucci P.C.), and that Westsphere would be considered a business management corporation, uninvolved in patient care.

Implementation of Mr. Carson's Recommended Organizational Structure

On November 2, 2001, Mr. Carson incorporated Westsphere, and on December 20, 2001, he organized Robucci LLC and incorporated Robucci P.C.

During the years at issue, Dr. Robucci was the sole shareholder of both corporations.  During that same period, Robucci LLC was 95-percent owned by Dr. Robucci and 5-percent owned by Robucci P.C.  Robucci P.C.'s interest was as a limited

partner.[4]  Dr. Robucci's 95-percent ownership interest was reflected on Robucci LLC's partnership returns as split between an 85-percent interest as a limited partner and a 10-percent interest as a general partner.  Mr. Carson determined the ownership percentages, and he also determined the 85-percent-10-percent split in Dr. Robucci's ownership interest between that of limited and general partner.  Mr. Carson, who has testified as an expert in valuation matters since 1976, based his determination of an 85-percent limited partner ownership interest for Dr. Robucci on what he determined to be the value of Dr. Robucci's goodwill and what would be a reasonable rate of return on that goodwill at the time he formed Robucci LLC.  Mr. Carson never discussed with Dr. Robucci the basis for the 85-percent-10 percent allocation between his limited and general partner interests in Robucci LLC (although Dr. Robucci did understand that his 10-percent general partnership interest represented his interest as a provider of medical services and his 85-percent limited partnership interest represented his interest attributable to his capital contribution of intangibles), nor did Mr. Carson prepare a written valuation in support of his

---

[4]Pursuant to sec. 301.7701-3(b)(1)(i), Proced. & Admin. Regs., a multimember LLC that does not elect association status (which describes Robucci LLC) is treated, for Federal tax purposes, as a partnership.  Thus, Robucci LLC's members would constitute partners for Federal tax purposes if it were respected as a two-member entity.

attribution of an 85-percent limited partner interest to transferred intangibles. Dr. Robucci did not make any written assignment of the tangible or intangible assets of his practice to Robucci LLC.

Dr. Robucci (as president of Westsphere) executed a loan agreement, effective November 2, 2001, whereby he (as "employee") was authorized to borrow money from Westsphere "from time to time" under certain specified terms and conditions.

Dr. Robucci executed an "Employee Business Expense Reimbursement Plan", effective as of November 2, 2001, whereby Westsphere agreed to reimburse its employees for "all employment related expenses" upon submission of the proof of expenditure documentation specified in the plan. The plan provides a formal review procedure for denied claims.

Dr. Robucci executed documents for two additional plans, also effective as of November 2, 2001: (1) A "Medical Reimbursement Plan of Westsphere Management Corp." whereby Westsphere, "in addition to providing any basic medical insurance coverage for its employees", agreed to reimburse employee medical expenses, as defined in section 213, and (2) a "Diagnostic Medical Reimbursement Plan" whereby Westsphere, "in addition to providing any basic medical insurance coverage for its officers",

agreed to reimburse them and their families for expenses of "diagnostic medical procedures" incurred at certain specified medical facilities and not otherwise covered by insurance.

Mr. Carson also drafted a document entitled "Operating Agreement of * * * [Robucci LLC]", whereby Robucci P.C. was designated as manager of Robucci LLC. It is uncertain whether Dr. Robucci ever executed that agreement on behalf of either of the parties, Robucci P.C. and Robucci LLC.

Dr. Robucci had a limited understanding of the need for the entities formed and the agreements and other documents drafted by Mr. Carson. He relied on Mr. Carson's representations that the actions taken would legitimately result in the tax minimization that he sought.

The Operation of Robucci LLC and the Corporations

During the years in issue Robucci LLC and Westsphere had bank accounts; Robucci P.C. did not. Dr. Robucci did not have an employment agreement with any of those three entities, nor did any of them have employees during the years in issue. Neither Robucci P.C. nor Westsphere paid a salary to Dr. Robucci or to anyone else during those years. Dr. Robucci did not keep records of any time he might have spent working for Westsphere. Although Robucci LLC deducted "management fees" for each of the years in issue ($31,475, $25,500, and $38,385 for 2002, 2003, and 2004, respectively), its returns do not specify to whom they were paid

or for what services.[5]  Dr. Robucci was aware that Westsphere charged management fees to Robucci LLC, but he did not know the nature of those charges, other than that they probably related to his time spent performing functions related to his medical practice that did not involve actual patient care.

Both before and after the formation of Robucci LLC, Debbie Williams (Ms. Williams) was the billing assistant for Dr. Robucci's practice.  During the years in issue, although she received instructions from Dr. Robucci in letters with a letterhead that referred to "Tony L. Robucci, M.D., A Professional L.L.C.", she still considered herself to be in the employ of Dr. Robucci.  Dr. Robucci paid Ms. Williams a percentage of what she collected from patients, which amounted to more than $8,500 for 2002 and 2003 and more than $10,500 for 2004.

During the years in issue, Dr. Robucci continued to bill Medicare and Medicaid (a relatively small portion of his practice) as an individual practitioner under his own Social

---

[5]No such payments are identifiable on the 2002-04 bank statements for either Robucci LLC or Westsphere.  Nor are they identifiable as gross income on the returns filed by Robucci PC and Westsphere for their taxable years ending Nov. 30, 2002, 2003, and 2004, although that may be attributable to timing differences because Robucci LLC is a calendar year taxpayer.

Security number because both were uninformative as to the procedures necessary to establish Robucci LLC as the provider of Medicare and Medicaid eligible psychiatric services.

Beginning with their dates of organization and throughout the years in issue, Robucci LLC and the corporations used the same business address, although there was no written lease agreement between Robucci LLC and either of the corporations.

The corporations did not (1) have separate Web sites or telephone listings, (2) pay rent to Dr. Robucci or Robucci LLC, (3) have customers other than Robucci LLC or contracts with any other third parties, or (4) advertise. Westsphere did not have separate dedicated space in Dr. Robucci's office.

During the years in issue, Robucci LLC was a calendar year taxpayer and the corporations reported on the basis of fiscal years ending November 30.

Dr. Robucci's Payment of Self-Employment (SECA) Taxes

Dr. Robucci's 2002, 2003, and 2004 Forms 1040, U.S. Individual Income Tax Return, show the following distributions to him of "passive" and "nonpassive" income from Robucci LLC:

| Year | Passive Income | Nonpassive Income |
|------|----------------|-------------------|
| 2002 | $48,153 | $5,665 |
| 2003 | 57,446 | 6,851 |
| 2004 | [1]95,143 | 11,193 |

[1]Dr. Robucci's 2004 return actually reported this amount as nonpassive income on Schedule E, Supplemental Income and Loss, but that was, doubtless, an unintentional error as the 2004 Schedule K-1, Partner's Share of Income, Deductions, Credits,

etc., issued to him by Robucci LLC in connection with his 85-percent limited partnership interest lists $95,143 as the distribution attributable to that (passive) interest, and Dr. Robucci's 2004 Schedule SE, Self-Employment Tax, includes only $11,193 as net earnings from self-employment.

Dr. Robucci's Schedule SE, Self-Employment Tax, filed for each of those years, lists only the nonpassive income as gross earnings from self-employment subject to self-employment tax.  The nonpassive income amounts correspond to Dr. Robucci's 10-percent general partner interest in Robucci LLC.

OPINION

I.  Whether Robucci PC and Westsphere Should Be Disregarded for Federal Income Tax Purposes

A.  Introduction

Dr. Robucci is not the first and, most certainly, he will not be the last individual to attempt to conduct his business affairs, in this case a medical practice, in a manner that he hopes will minimize his Federal income tax liability arising therefrom.  That he may do so has become axiomatic.  As famously stated by the Supreme Court in Gregory v. Helvering, 293 U.S. 465, 469 (1935):  "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted."  Directly after that statement, however, the Court added the admonition:  "But the question for determination is whether what was done, apart from tax motive, was the thing which the statute intended."  Id.

In <u>Chisholm v. Commissioner</u>, 79 F.2d 14, 15 (2d Cir. 1935), revg. 29 B.T.A. 1334 (1934), Judge Learned Hand elaborated upon the Supreme Court's admonition in <u>Gregory</u>, stating: "The question always is whether the transaction under scrutiny is in fact what it appears to be in form".

The issue in these cases is whether the corporations, Robucci P.C. and Westsphere, are entitled to respect as viable business corporations or whether, as in Judge Hand's description of the facts in <u>Gregory</u>, the incorporator's "intent, or purpose, was merely to draught the papers, in fact not to create corporations as the court * * * [understands] that word." <u>Id.</u> In other words, were Robucci P.C. and Westsphere corporations in fact as well as in form; i.e., were they "the thing which the statute intended" when referring to corporations?

A corporation will be recognized as a separate taxable entity if (1) the purpose for its formation is the equivalent of business activity or (2) the incorporation is followed by the carrying on of a business by the corporation. <u>Moline Props., Inc. v. Commissioner</u>, 319 U.S. 436, 438-439 (1943); <u>Achiro v. Commissioner</u>, 77 T.C. 881, 901 (1981).[6] If neither of those

_____

[6]See also <u>Natl. Investors Corp. v. Hoey</u>, 144 F.2d 466, 468 (2d Cir. 1944), in which Judge Hand described the rule for corporate viability as follows:

> to be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or
> (continued...)

requirements is satisfied, the corporation will be disregarded for Federal tax purposes, and all of its income will be attributed to the true earner. Shaw Constr. Co. v. Commissioner, 35 T.C. 1102, 1114-1117 (1961), affd. 323 F.2d 316 (9th Cir. 1963); Aldon Homes, Inc. v. Commissioner, 33 T.C. 582, 597-607 (1959). Should we decide to disregard the corporations in these cases, the true earner of the income from his practice would be Dr. Robucci because Robucci LLC, upon our disregard of Robucci P.C., would become a single-member noncorporate entity that did not make an election to be treated as an association. As such, it too would be disregarded under the so-called check-the-box regulations. See sec. 301.7701-3(b)(1)(ii), Proced. & Admin. Regs.[7]

B. Burden of Proof

If a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's tax liability and the taxpayer complies with all substantiation requirements, maintains all required records, and cooperates with the Commissioner's reasonable requests for witnesses, section

---

[6](...continued)
other activity besides avoiding taxation: in other words, * * * the term "corporation" will be interpreted to mean a corporation which does some "business" in the ordinary meaning; and * * * escaping taxation is not "business" in the ordinary meaning.

[7]Respondent does not seek to disregard Robucci LLC on the basis that it is a sham entity.

7491(a) places the burden of proof on the Commissioner with respect to that issue. See sec. 7491(a); Rule 142(a)(2). Respondent alleges that "petitioners did not even attempt to substantiate the great majority of the [disallowed] expenses" as required by section 7491(a)(2)(A).

We need not decide whether section 7491(a) applies to the material factual issue in these consolidated cases (the viability of Robucci P.C. and Westsphere) because we find that a preponderance of the evidence supports our resolution of that issue. Therefore, resolution of that issue does not depend on which party bears the burden of proof. See, e.g., Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005).

C. Arguments of the Parties

Petitioners argue that as "managing member" of Robucci LLC, Robucci P.C. "performed oversight and management" services and that Westsphere was established to (1) "provide oversight, and to manage certain overheads and indirect expenses, including employee benefits such as health insurance", (2) "track business expenses and overheads", and (3) create a "group" for group sickness and accident insurance coverage under Colorado law. Petitioners also argue that the formation of a multimember LLC, including a corporate member, afforded Dr. Robucci superior protection, under Colorado law, against personal liability for

acts of Robucci LLC, and that Robucci P.C.'s interest in Robucci LLC was necessary to accomplish that goal.

Respondent argues that (1) the corporations "were created solely for the purpose of reducing * * * [Dr. Robucci's] tax liability" and, more specifically, to help him "avoid income and self-employment taxes"; (2) petitioners "did not offer any credible explanation of the business purpose for forming the corporations"; and (3) petitioners "did not demonstrate that either corporation engaged in any business activity after it was formed."

For the reasons that follow we agree with respondent.

D.  Analysis

1.  Business Purpose

a.  Introduction

In order to satisfy the first prong of the alternative two-prong test of Moline Props., Inc. v. Commissioner, supra at 439, the evidence must demonstrate that the corporations were incorporated for a purpose that "is the equivalent of a business activity".  Petitioners' evidence fails to establish that such a purpose motivated the organization of either corporation.

b.  Robucci P.C.

Petitioners state two reasons for the formation of Robucci P.C.:  (1) Its role as the "managing member" of Robucci LLC (a role not reflected in Robucci P.C.'s articles of incorporation,

which state that its "sole purpose" is to practice medicine "through persons licensed * * * [in Colorado] to practice medicine" in that State) and (2) the superior protection against personal liability that would be afforded to Dr. Robucci by the formation of a multimember LLC.

In support of the first reason, petitioners cite provisions of Colorado law that permit the management of an LLC to be vested in one or more managers or managing members. See Colo. Rev. Stat. secs. 7-80-204(e), 7-80-402 (2010). Assuming arguendo that Robucci P.C. was properly organized under Colorado law, it does not follow that it performed any function that would warrant its recognition as a viable entity for Federal tax purposes. E.g., Noonan v. Commissioner, 52 T.C. 907, 909 (1969), affd. 451 F.2d 992 (9th Cir. 1971). Although Robucci P.C. may have been a party to an "operating agreement" with Robucci LLC whereby it was appointed Robucci LLC's "manager", and although its corporate income tax returns for its fiscal years ending November 30, 2003 and 2004, indicate that it received payments from Robucci LLC of $3,425 and $2,833 in those years, respectively, there is no evidence that Robucci P.C. actually performed any management (or other) services for Robucci LLC. Robucci P.C. had no assets (other than its interest in Robucci LLC) or employees, it had no service contract with Robucci LLC, and it paid no salary to Dr. Robucci or anyone else during the years in issue. That Robucci

P.C. was intended to perform no management services or other business activities is further indicated by Mr. Carson's handwritten note, written while his firm was preparing the Robucci P.C. and Westsphere returns for one of the years in issue, in which he states:  "We need P.C. to be a partner in LLC only Westsphere is the mgmt. corp. P.C. does nada [nothing]".

In support of the second reason, petitioners cite In re Albright, 291 Bankr. 538 (Bankr. D. Colo. 2003), in which the court permitted the trustee in bankruptcy to liquidate all of the property of a single-member LLC on behalf of creditors.  The court reasoned that (1) the absence of other members in the LLC meant that "the entire membership interest passed to the bankruptcy estate, and the Trustee became a 'substituted member'" under Colo. Rev. Stat. sec. 7-80-702 governing the transferability of LLC interests, and (2) as the sole member of the LLC, "the Trustee now controls * * * all governance of that entity, including decisions regarding liquidation of the entity's assets."  In re Albright, supra at 540-541.

Petitioners' reliance upon Albright is misplaced.  That case does not involve a creditor's right to hold the sole member of a single-member LLC personally liable for the LLC's debts.  Rather, it holds that all of the LLC's assets are available to satisfy the claims of the sole member's creditors (and not that the sole

member's assets are available to the LLC's creditors).[8]  The trustee did not attempt to pierce the "corporate" veil to reach the member's personal assets to satisfy the LLC's debts. Moreover, as the name suggests, members of a Colorado limited liability company generally are not personally liable for the debts of the company; i.e., their liability is, in fact, limited to their investment in the LLC.  See Colo. Rev. Stat. sec. 7-80-705 (2010) ("Members * * * of limited liability companies are not liable * * * for a debt, obligation, or liability of a limited liability company.").[9]

---

[8]In a footnote, the court notes that the right, under Colo. Rev. Stat. sec. 7-80-702, of the nondebtor LLC members to prohibit a transferee of the debtor member's interest to govern or to participate in the management of a multimember LLC:

> does not create an asset shelter for clever debtors.  To the extent a debtor intends to hinder, delay or defraud creditors through a multi-member LLC with "peppercorn" co-members, bankruptcy avoidance provisions and fraudulent transfer law would provide creditors or a bankruptcy trustee with recourse. * * *

In re Albright, 291 Bankr. 538, 541 n.9 (Bankr. D. Colo. 2003).

[9]Colorado does, however, permit courts to hold LLC members personally liable for alleged improper acts of the LLC by applying "case law which interprets the conditions and circumstances under which the corporate veil of a corporation may be pierced under Colorado law."  See Colo. Rev. Stat. sec. 7-80-107(1) (2010).  There does not appear to be any distinction in the application of that provision between single and multimember LLCs; and, even if there were, our implicit conclusion herein that Robucci P.C. is, in substance, a "peppercorn" member of Robucci LLC would arguably negate any such distinction in the eyes of the Colorado bankruptcy court.  See supra n.8.

We find that Robucci P.C. was not formed for a purpose that "is the equivalent of a business activity" within the meaning of Moline Props., Inc. v. Commissioner, 319 U.S. at 439.

c. Westsphere

Petitioners list three purposes for the organization of Westsphere, the first two being the management and the tracking of overhead and indirect expenses. The idea was to assist Dr. Robucci to "'think more like a business'" and to "group overheads and general and administrative costs separately from the direct costs of a professional services operation." Here again, the evidence refutes the notion that those alleged purposes constituted bona fide nontax purposes for the organization of Westsphere. Although, unlike Robucci P.C., Westsphere had a checking account, like Robucci P.C., it had no employment agreement with Dr. Robucci and no employees. Nor did it perform any management or other services for Robucci LLC in the person of Dr. Robucci. Rather, Dr. Robucci continued to conduct his practice as he always had, including the retention of Ms. Williams as his billing assistant.

The only activity allegedly attributable to Westsphere during the audit years was its reimbursement of various expenses incurred by Dr. Robucci and Robucci LLC pursuant to the various plans requiring those reimbursements. Dr. Robucci testified that that activity consisted of electronic transfers of funds between

bank accounts. Thus, Dr. Robucci continued, as in prior years, to pay the expenses of his practice, but allegedly out of Robucci LLC's bank account. Westsphere's only alleged "service" was to reimburse those expenses by electronic transfers of funds from its account to Robucci LLC's account.[10] The bank account statements in the record provide scant evidence that there were, in fact, regular interaccount transfers from Westsphere to Robucci LLC. For example, Westsphere's bank statement dated January 23, 2003, shows debits of $5,097.60 and $1,114.84 for a "2002 Medical Expenses Reimbursement" and a "Health Insurance Premium Reimbursement", respectively, but the absence of corresponding credits to Robucci LLC's account on the same date or thereafter indicates that the transfer of funds may have been to Dr. Robucci's personal account. In fact, the bank statements in evidence demonstrate virtually no correlation between debits to Westsphere's bank account and credits to Robucci LLC's bank account. In any event, because Dr. Robucci controlled both entities, those interaccount transfers, to the extent they occurred, were the equivalent of taking money from one pocket and putting it into another. Such a procedure hardly qualifies as a "business activity" within the contemplation of Moline Props., Inc. v. Commissioner, supra at 439.

_____

[10]Dr. Robucci testified that he did not know why expenses were paid by Robucci LLC and reimbursed by Westsphere rather than paid by Westsphere directly.

Petitioners also argue that the organization of Westsphere was essential in order to create a "group" eligible for "group sickness and accident insurance" within the meaning of Colo. Rev. Stat. sec. 10-16-214 (2010). They also cite Colo. Rev. Stat. sec. 10-16-105.2(1)(c)(I) (2010), which provides in part that the provisions governing "small group plans shall not apply to an individual health benefit plan newly issued to a business group of one that includes only a self-employed person who has no employees". The alleged concern was that, "from an insurer's perspective, a single member * * * LLC may present an ambiguity as to that member's status as 'self-employed.'" Whatever the merits of petitioners' concerns in that regard, it is not clear how the formation of Westsphere alleviated those concerns. The "groups" to be afforded coverage are "groups of persons", generally, under policies issued to an employer for the benefit of the employees, which include officers, managers, and other employees of the employer. See Colo. Rev. Stat. sec. 10-16-214(1)(a). It is difficult to see how the organization of Westsphere, which neither is an employee of Robucci LLC nor has employees of its own, could serve to alleviate petitioners' fears of not qualifying for small group or small employer health insurance. More importantly, there is no evidence that Robucci LLC made any effort to obtain group health insurance for its sole operative, Dr. Robucci. The evidence shows that Dr. Robucci or

Robucci LLC continued to pay premiums for health insurance, but it is not clear that the policy in question differed from the one Dr. Robucci had as a sole proprietor.

Petitioners have not persuaded us that Westsphere was organized for a purpose that "is the equivalent of a business activity" under Moline Props., Inc. v. Commissioner, supra at 439.

### 2.  Business Activities

The fact that both Robucci P.C. and Westsphere were, essentially, hollow corporate shells also leads us to conclude that neither carried on a business after incorporation, the second alternative prong for corporate viability under Moline Properties.

### E.  Conclusion

Robucci LLC's deduction of over $95,000 in management fees for the years in issue resulted in a substantial tax benefit to Dr. Robucci by reducing (by that amount) Robucci LLC's potential distribution to him of income at least a portion of which otherwise would have been subject to self-employment tax. Because Robucci P.C. and Westsphere served no significant purpose or function other than tax avoidance, we agree with respondent that they should be disregarded.  What we said in Aldon Homes, Inc. v. Commissioner, 33 T.C. at 598, in disregarding 16 so-called alphabet corporations is equally applicable to this case:

> The alleged business purposes impressed us simply as a lawyer's marshaling of possible business reasons that might conceivably have motivated the adoption of the forms here employed but which in fact played no part whatever in the utilization of the * * * [structure employed]

Our disregard of Robucci P.C. for Federal tax purposes leaves Robucci LLC as a single-member LLC; and because of its failure to make a protective election under section 301.7701-3(a), Proced. & Admin. Regs., to be classified as an association, i.e., as a corporation, see sec. 301.7701-2(b)(2), Proced. & Admin. Regs., it too is disregarded for Federal tax purposes under section 301.7701-3(b)(1)(ii), Proced. & Admin. Regs.  The result is that Dr. Robucci is treated as a sole proprietor for Federal tax purposes, which was his status before the formation of Robucci LLC and the corporations.  It follows, and we hold, that the net income arising from his psychiatric practice during the years in issue, including any amounts paid to Robucci P.C. and Westsphere, was self-employment income of Dr. Robucci subject to self-employment tax under section 1401.

## II.  Imposition of the Accuracy-Related Penalty

### A.  Applicable Law

Section 6662(a) and (b)(1)-(3) provides for an accuracy-related penalty (the penalty) in the amount of 20 percent of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules or regulations (without distinction, negligence), any substantial understatement

of income tax, or any substantial valuation misstatement. Although the notice issued to Dr. Robucci states that respondent bases his imposition of the penalty upon "one or more" of the three above-referenced grounds, it is clear that only the first two (negligence and substantial understatement of income tax) are potentially applicable herein.

A substantial understatement of income tax exists for an individual if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. See sec. 6662(d)(1)(A). Respondent has established that Dr. Robucci's understatements of income tax for the years in issue are substantial as they exceed both 10 percent of the correct tax and $5,000. Therefore, we need not consider the grounds for determining whether Dr. Robucci was negligent within the meaning of section 6662(b)(1).

Section 6664(c)(1) provides that the penalty shall not be imposed with respect to any portion of an underpayment if a taxpayer shows that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, that portion.

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of * * * law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer. * * * Reliance * * * on the advice of a

> professional tax advisor * * * does not
> necessarily demonstrate reasonable cause and good
> faith. * * *

Sec. 1.6664-4(b)(1), Income Tax Regs.

Reasonable cause has been found when a taxpayer selects a competent tax adviser, supplies the adviser with all relevant information and, in a manner consistent with ordinary business care and prudence, relies on the adviser's professional judgment as to the taxpayer's tax obligations.  United States v. Boyle, 469 U.S. 241, 251 (1985); Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(b)(1), Income Tax Regs.  A taxpayer may rely on the advice of any tax adviser, lawyer, or accountant.  United States v. Boyle, supra at 251.  Reliance on a professional tax adviser will not be considered reasonable, however, if the adviser is a promoter of the transaction or suffers from "a conflict of interest * * * that the taxpayer knew of or should have known about."  Neonatology Associates, P.A. v. Commissioner, 299 F.3d at 234; Pasternak v. Commissioner, 990 F.2d 893, 903 (6th Cir. 1993), affg. Donahue v. Commissioner, T.C. Memo. 1991-181.  "[T]he taxpayer's education, sophistication and business experience will be relevant in determining whether the taxpayer's reliance on tax advice was reasonable and made in good faith."  Sec. 1.6664-4(c)(1), Income Tax Regs.

B. <u>Analysis</u>

Under section 7491(c), respondent bears the burden of production, but not the overall burden of proof, with respect to Dr. Robucci's liability for the section 6662(a) penalty. See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001). We have previously stated that the "burden imposed by section 7491(c) is only to come forward with evidence regarding the appropriateness of applying a particular addition to tax or penalty to the taxpayer." <u>Weir v. Commissioner</u>, T.C. Memo. 2001-184. By demonstrating that Dr. Robucci's understatements of income tax exceed the thresholds for a finding of "substantial understatement of income tax" under section 6662, respondent has satisfied his burden of production.

Respondent argues that there was no reasonable cause for the positions taken by Dr. Robucci and that he did not act in good faith. In respondent's view, "[p]etitioner should have requested a second opinion after getting advice that was clearly too good to be true". Respondent views Mr. Carson as "the promoter of the arrangement, who earned substantial fees for incorporating the various sham entities and preparing the tax returns at issue". Petitioners deny that Mr. Carson was a promoter and argues that, in the light of Mr. Carson's status as an independent, experienced C.P.A., Dr. Robucci was under no obligation to obtain

a second opinion before he could reasonably rely on Mr. Carson's advice.

Even if we were to agree with petitioner that Mr. Carson was not a promoter, we agree with respondent that the tax result afforded by implementing Mr. Carson's suggestions, i.e., the dramatic reduction in Dr. Robucci's self-employment taxes, was "too good to be true".  See, e.g., Neonatology Associate, P.A. v. Commissioner, 299 F.3d at 234 ("When * * * a taxpayer is presented with what would appear to be a fabulous opportunity to avoid tax obligations, he should recognize that he proceeds at his own peril."); McCrary v. Commissioner, 92 T.C. 827, 850 (1989) (stating that no reasonable person should have trusted the tax scheme in question to work).  It is not that Mr. Carson's goal of directing some of Dr. Robucci's income to a third-party corporate management service provider and bifurcating Dr. Robucci's interest in Robucci LLC so that he would be separately compensated for the use of his intangibles was obviously unreasonable.  On the contrary, had it been more carefully implemented, it well might have been realized, at least in part.[11]  The problem for Dr. Robucci is that Mr. Carson's

_____

[11]Although it is apparently respondent's position that profit distributions to service-providing members of a multimember, professional service LLC (which is what Robucci LLC was designed to be) are never excepted from net earnings from self-employment by sec. 1402(a)(13), which so excepts distributions to a limited partner other than sec. 707(c)

(continued...)

strategy for implementing his tax minimization goal was patently inadequate to the task, a fact that should have been obvious to Dr. Robucci and have prompted him to either question Mr. Carson or seek a second opinion. Although Robucci P.C. and Westsphere were properly formed under Colorado law to carry out legitimate corporate functions, the fact that they were nothing more than empty shells, devoid of property, personnel, or actual day-to-day activities, i.e., of substance, should have sent warning signals to Dr. Robucci that those corporations were not effecting any meaningful change in the prior conduct of his medical practice. Although Dr. Robucci may have had some vague notion that he was acting on behalf of Westsphere when performing services other than actual patient care, there is little or no evidence as to the precise nature of those services, the time Dr. Robucci may have spent performing them, or their value. In short, there is no support for any charge from Westsphere to Robucci LLC for such services or for the claim that Dr. Robucci was wearing a Westsphere hat when he performed them. For Dr. Robucci, aside from signing a raft of documents and shifting some money between

----

[11](...continued) guaranteed payments for services rendered, the Secretary has yet to issue definitive guidance with respect to that issue, and the law remains in a state of uncertainty. See, e.g., Kalinka, 9A La. Civ. L. Treatise, Limited Liability Companies and Partnerships: A Guide to Business and Tax Planning, sec. 6.2, at 423 (3d ed. 2001); Chase, Self-Employment Tax and Choice of Entity, 34 Colo. Law. 109, 112 (Dec. 2005).

two new bank accounts, it was business as usual.  Moreover, although he might have been justified in relying upon Mr. Carson's expert valuation of his intangibles as the basis for the 85-10 split between his limited and general partnership interests in Robucci LLC, the lack of any formal transfer of those intangibles to Robucci LLC should have been cause for concern. Under those circumstances, it was incumbent upon Dr. Robucci, even though he was not a tax professional, to question the efficacy of the arrangement that purported to minimize his taxes while effecting virtually no change in the conduct of his medical practice.  By not doing so, Dr. Robucci failed to exercise the ordinary business care and prudence required of him under the circumstances.  But cf. United States v. Boyle, 469 U.S. at 251; Haywood Lumber & Mining Co. v. Commissioner, 178 F.2d 769, 770-771 (2d Cir. 1950), modifying 12 T.C. 735 (1949), which involve circumstances exemplifying the exercise of ordinary business care and prudence.

C.  Conclusion

Dr. Robucci is subject to the section 6662(a) penalty for each of the years in issue.

Decision will be entered for respondent in docket No. 17309-08 and for petitioners in docket Nos. 17310-08 and 17311-08.